Mathewson et al. *v.* Westinghouse Electric Corporation, Appellant.

Argued November 11, 1957. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

*John G. Wayman,* with him *Leonard L. Scheinholtz, Fred T. Fruit,* and *Reed, Smith, Shaw & McClay,* for appellant.

*Albert C. Shapira,* with him *Chester B. Scholl,* for appellees.

OPINION BY HIRT, J., January 21, 1958:

Westinghouse Electric Company operates manufacturing plants in various locations throughout the United States, among them a plant, together with adjunct administrative offices, in Sharon, Pennsylvania. Dur-

ing 1954 salaried employes of Westinghouse at Sharon were represented by Sharon Westinghouse Employees Association (which we will refer to as the *Association*) as their bargaining agent; this local union having been so certified by the National Labor Relations Board. The five plaintiffs in this case were salaried employes of Westinghouse in the Sharon plant and all were members of the above Association. The Association was affiliated with the Federation of Westinghouse Independent Salaried Unions (referred to herein as the *Federation*) which on behalf of the Association and for all other union-member-affiliates was empowered to bargain with Westinghouse on a company-wide basis as to all matters affecting employe-employer relationships.

About November 1, 1950, Westinghouse and the Federation entered into a written collective bargaining agreement (hereinafter called the *Contract*) which, as subsequently supplemented and extended, was in full force and effect at the times with which we are concerned. The Contract by its terms governed the pay, the hours and other working conditions of the plaintiffs as salaried employes in the Sharon plant. Section XII of the Contract provided: "1(a) Holidays observed by the Company will be New Year's Day, Washington's Birthday, Memorial Day, Independence Day, Labor Day, Thanksgiving and Christmas . . ."; and in paragraph 2: "Basic hours on an observed holiday will be credited as time worked for salaried employes."

On September 1, 1954, the plaintiffs and about 139 other salaried employes at the Sharon plant were furloughed because of a shut-down made necessary by a strike of another group of employes at the plant whose pay as wage earners, was measured at an hourly rate. A union, other than the Association, represented these striking workmen. The furlough of the plaintiffs re-

sulting from the strike did not end until October 5, 1954. Labor Day, one of the observed holidays under §XII, supra, occurred on September 6, 1954, within the furlough period. When they returned to work the plaintiffs through the Association requested pay for Labor Day, 1954, and upon refusal of the request by Westinghouse, this action was brought in assumpsit to recover pay for that holiday. In bringing suit the plaintiffs relied entirely on the provisions of §XII of the contract, relating to holidays, above quoted. The defendant on the other hand contended that §XII had no application and took the position that the issues were ruled by §IX of the contract applicable to "Emergency Furloughs" which in relevant part provides: "9(b) Emergency Furloughs are periods off *without pay* resulting from material shortages, power failure, *labor disturbances* or other conditions where transfer of employes to provide work is not feasible . . ." (Italics added). That these plaintiffs were on "Emergency Furlough" within the definition of the contract, was admitted by the plaintiffs and it was so stipulated of record on the trial of these cases.

Actually there were no facts in dispute, and on the trial of the consolidated cases by the court without a jury it was held: "1. The holiday pay provisions of the contract involved in this case apply to the plaintiffs notwithstanding they were on emergency furlough when the holiday was observed. 2. The plaintiffs may recover holiday pay from the defendants for Labor Day, 1954." On these conclusions judgments were ultimately entered for the plaintiffs in varying amounts for the Labor Day holiday, computed on their salary rates for an eight-hour day, This is the appeal of Westinghouse (applicable to all other plaintiffs) from the final judgment so entered in favor of Sidney Greenberger.

In the absence of disputed facts the controlling questions are of law and involve a construction of the Contract; particularly the above quoted sections XII and IX relating to Holidays and to Emergency Furloughs, and the effect of each upon the other. Well settled principles are to be applied, and as they appear in many of our decisions, are thus stated in *Silverstein v. Hornick*, 376 Pa. 536, 540, 103 A. 2d 734: " 'The cardinal rule in the interpretation of contracts is to ascertain the intention of the parties and to give effect to that intention if it can be done consistently with legal principles' . . . 'Contracts must receive a reasonable interpretation, according to the intention of the parties . . . if that intention can be ascertained from their language' . . . 'in order to ascertain that intention, the court may take into consideration *the surrounding circumstances, the situation of the parties, the objects they apparently have in view, and the nature of the subject-matter of the agreement*' ": *Betterman v. American Stores Co.*, 367 Pa. 193, 203, 204, 80 A. 2d 66. Moreover in construing a contract every one of its provisions must be given effect if possible and the intent of the parties must be ascertained from the instrument as a whole. *Neal D. Ivey Co. v. Franklin Associates, Inc.*, 370 Pa. 225, 87 A. 2d 236; *Robinson et al. v. Stover*, 320 Pa. 308, 182 A. 145.

As a basis for its conclusions above quoted it was the view of the lower court "that subsection 2 of Section XII [providing that] 'basic hours on an observed holiday will be credited as time worked for salaried employees' means that holiday pay will be awarded to every salaried employe on the active roll for every observed holiday." The difficulty with that construction is that §XII when so read wholly ignores §IX. Concededly, the plaintiffs were on emergency furlough, as defined by the Contract, and §IX(b) in unmistakable

language says that "Emergency Furloughs are periods off without pay." The meaning of this language of §IX is plain and unless in conflict with some other provision of the contract must be construed to mean just what it says. "Where the words of a contract in writing are clear and unambiguous, its meaning is to be ascertained in accordance with its plainly expressed intent": *Gately and Fitzgerald v. Saladoff,* 174 Pa. Superior Ct. 56, 58, 98 A. 2d 258; *Topkis v. Rosenzweig,* 333 Pa. 529, 5 A. 2d 100. The court however in construing this language held that "without pay" means without salary, but with compensating pay for holidays occurring during the emergency furlough as defined in the Contract. In so holding the court in effect adopted the contention of the appellees that by the provision "Basic hours, on an observed holiday will be credited as time worked for salaried employes", the parties intended "compensated leisure" for salaried employees for the seven designated holidays in spite of the emergency furlough provision defined by the contract as "period off without pay". In so doing the court found that §IX had much in common with the section of the contract relating to Vacations. Section XIII under the heading Vacations provided: "When an employe is removed from the active payroll for any reason, except disciplinary discharge, payment for vacation not taken for the current year will be made *if the employe has qualified for vacation."* (Italics added). We are unable to recognize any analogy between the two. Judge AUGUSTUS HAND in making definite and clear the legal implications of the word "vacation" in a contract, such as this, stated: "A vacation with pay is in effect additional wages . . . The consideration for the contract to pay for a week's vacation had been furnished, that is to say, [e.g.] one year's service had been rendered prior to June 1, so that the week's vacation with pay

was completely earned and only the time of receiving it was postponed": *In re Wil-Low Cafeterias, Inc.,* 111 F. 2d 429, 432. The qualifying phrase in §XIII(8), which we have italicized, supra, is all important to its application. And one under the Contract could qualify for vacation, only by earning it in advance by length of service rendered. In a sense, a vacation with pay is compensated leisure, but it is also compensation which an employe has earned in advance in the nature of "additional wages" and is not a gratuity payable under this labor contract as a fringe benefit or otherwise. The right of several salaried employes other than the plaintiffs to receive both salaries and holiday pay during the furlough is recognized in this record. But they had "qualified for vacation" and their designated vacation time came during the emergency furlough period; they therefore were not within the class of employes on furlough without pay. One on vacation is not on furlough.

"Where the words of a contract in writing are clear and unambiguous, its meaning is to be ascertained in accordance with its plainly expressed intent": *Atlantic Ref. Co. v. Wyoming Nat. Bank,* 356 Pa. 226, 233, 51 A. 2d 719. In the application of this familiar principle we are unable to find any ambiguity in the clear and simple language of §IX when read in the light of the contract as a whole or even of §XII in particular. And we cannot agree with the lower court that the unqualified statement of §IX "without pay" can be modified by §XII to mean "with holiday pay, but without regular salary." The parties had the right to make their own agreement and under the guise of interpretation we, also, are without authority to rewrite the contract by giving it a construction in conflict with the accepted and plain meaning of the language used. *Hagarty v. Wm. Akers, Jr. Co., Inc.,* 342 Pa. 236, 239,

20 A. 2d 317. In *Kennedy v. Westinghouse Electric Corp.* (N. J.), 108 A. 2d 409, 414, in which a collective bargaining agreement provided for the observance of the same holidays as in the instant contract, and in the same language, it was held: "The clear implication is that the holiday provision [i.e., holiday with pay] was intended to assure that the take-home pay of an employee regularly earning wages for labor performed should not be diminished when the holiday is observed on a day during his regular work week."

The foregoing conclusion in the *Kennedy* case, with which we are in complete agreement as the only proper conclusion in this case, also refutes the contention that observed holidays constitute a unique kind of compensated leisure time. Under the provision of §XII a salaried employe is not entitled to an additional day's pay for an observed holiday. If he takes the day off, such observance nevertheless operates to credit him with a basic eight-hour day as time worked. If he works on an observed holiday, whatever he is entitled to as overtime pay is determined by another section of the contract. But if a designated holiday occurs during a period when he is not working and not entitled to salary, as in the instant case, because of emergency furlough without pay, the holiday provision does not affect his compensation status. Such salaried employe loses nothing by reason of the holiday; likewise he gains nothing by way of credit for time worked because if he is not working nor scheduled to work when the holiday occurs he can hardly be said to "observe" the holiday by taking time off from no work at all. Accordingly we find nothing in the holiday provision of the contract of §XII which in any way limits the unequivocal statement of §IX that "Emergency Furloughs are periods off without pay."

Judgment reversed.