Sharp *v.* McKelvey, Appellant.

Argued June 12, 1961. Before ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ. (RHODES, P. J., absent).

 Before WISSLER, P. J., without a jury.

*Henry F. Gingrich,* for appellant.

*John C. Pittenger,* with him *Paul A. Mueller, Jr.,* and *Barley, Snyder, Cooper & Mueller,* for appellee.

OPINION BY WRIGHT, J., September 12, 1961:

We are here concerned with an assumpsit action arising out of negotiations involving the purchase of a horse. After the filing of a complaint, an answer with counterclaim, and a reply, the matter was referred to arbitrators who found for the defendant (one arbitrator dissenting) and awarded him $180.00 on the counterclaim. Upon appeal to the court of common pleas the case was tried without a jury. The hearing judge rendered a verdict for the plaintiff in the sum of $1,-020.00. Exceptions filed by the defendant were dismissed by the court en banc, and entry of judgment was directed in accordance with the verdict. The defendant has appealed.

In September, 1957, Hugh R. Sharp, Jr. of Wilmington, Delaware, was interested in securing a horse for his daughter. He obtained a horse from Thomas McKelvey, a farmer and horseman in Lancaster County, Pennsylvania, for which horse Sharp was to pay $2,-000.00. After a trial period, which was longer than customary because of plaintiff's contention that the horse was not in good condition when it was obtained, Sharp attempted to return the horse to McKelvey. On September 16, 1957, the parties entered into an agreement with reference to the horse consisting of the following letter from Sharp and acceptance thereof by McKelvey:

"Mr. Thomas McKelvey, R. D. 1 Oxford Pennsylvania Dear Mr. McKelvey: In regard to the horse, which my daughter Donnan Sharp has had on trial from you for several months, and following up our correspondence in the matter and our telephone call of the evening of December 14th, I would like to outline the

following agreement, which I think is in accordance with our verbal understanding on the telephone:

"I will purchase the horse in question from you for $1,500 and return it to you for whatever treatment it requires to bring the horse back to sound condition. For this purpose I will pay board on the horse at the rate of $40.00 a month until the horse is cured or until the end of April, whatever occurs first. In other words, I will not be responsible for board after the end of April. As soon as the horse is sound, you will use your best efforts to sell it for whatever price you consider proper, provided this price is over $1,200.00. From the sale price you will return to me $1,500.00 and you are to keep any money you are able to get over and above that price. Should the horse not be sold by the 30th of June you will buy the horse from me for $1,200.00. In other words, if you have sold the horse prior to the 30th of June I will get a minimum of $1,200 and a maximum of $1,500.00 if you have sold him above that of June, you buy him from me for $1,200.00. amount. If you have not sold the horse before the end

"If this agreement is in accord with your understanding of our verbal agreement of last Saturday night, would you be kind enough to sign the enclosed copy of this letter and return it to me. Most sincerely yours, (s) Hugh R. Sharp, Jr.

"I hereby accept the above conditions and become a party to the above agreement. (s) Thomas McKelvey".

At the time of this agreement, according to Sharp's testimony, McKelvey said "that he was sure that the horse would respond to treatment that he knew he could give the horse and make him sound". The horse did not become sound prior to June 30, 1958, nor was it sold prior to that date. For the sake of completeness, although not material to the disposition of the

instant appeal, we note that the horse died on September 3, 1960.

In accordance with the terms of the agreement, Sharp paid McKelvey $1,500.00. He took the position at the trial that he was entitled to recover the sum of $1,200.00, subject to a deduction in the amount of $180.00, representing board for the horse until the end of April, 1958. On the other hand, McKelvey took the position that the horse was sound when obtained by Sharp, that the agreement resulted from his refusal to accept the return of the horse in a lame and injured condition, and that he was not obliged to keep the horse after June 30, 1958, since it had not become sound by that date, wherefore he owed Sharp nothing. In addition to counterclaiming for the $180.00 admitted by Sharp to be due, McKelvey also counterclaimed for board subsequent to June 30, 1958. As indicated in the first paragraph of this opinion, the court below adopted Sharp's position.

Appellant here raises two contentions as follows: (1) "Was the soundness of the horse a condition precedent to any obligation on the part of the appellant to buy or sell the horse in the contract entered into by the parties hereto?"; (2) "If the soundness of the horse was a condition precedent to an obligation on the part of the appellant to buy or sell the horse, then is the appellant entitled to any board for said horse after the end of April, 1958, if the appellee wrongfully refused the return of the horse?" Since we agree with the court below that the soundness of the horse was not a condition precedent, it is unnecessary to consider appellant's second contention.

At the trial, counsel for appellant stated for the record that: "The defendant has never taken the position that the agreement was ambiguous. It is only the interpretation of some of the words therein that we put a different interpretation on them other than what

they put on. I don't think the court has to decide whether there was ambiguity in the agreement. We don't think there is". The pivotal issue, it seems to us, is what the parties intended by the agreement if the horse did not become sound by June 30, 1958, and was not sold by that date.

In construing an agreement, it is fundamental that the intention of the parties is controlling, and that intention must be ascertained from the entire instrument: *Waldman v. Shoemaker*, 367 Pa. 587, 80 A. 2d 776. Each and every part of the agreement must be taken into consideration and given effect if possible, and an interpretation will not be given to one part which will annul another part: *Neal D. Ivey Co. v. Franklin Associates*, 370 Pa. 225, 87 A. 2d 236; *Powell Appeal*, 385 Pa. 467, 123 A. 2d 650; *Cerceo v. DeMarco*, 391 Pa. 157, 137 A. 2d 296; *Byrne v. Bushkoff*, 177 Pa. Superior Ct. 101, 110 A. 2d 813. By referring to only a part of the agreement, appellant seeks to establish a condition precedent to his undertaking to buy or dispose of the horse, giving no effect to the words which the parties thereafter used. He argues that the phrase "As soon as the horse is sound" creates a condition precedent to any obligation on his part to buy or sell the horse. He cites cases from other jurisdictions and text book authority holding that the words "as soon as" indicate a conditional promise or condition precedent. To determine the effect of this argument in the instant case, we must consider the phrase in context and analyze the agreement in its entirety.

The instant agreement may logically be divided into four parts. First, the appellee agreed to purchase the horse from appellant for $1,500.00, and to return it to appellant for whatever treatment was required to bring it back to sound condition. Second, appellee agreed to pay board "until the horse is cured or until the end of April, whatever occurs first". Then follows

a significant sentence which in our opinion, entirely precludes any further collection of board: "In other words, I will not be responsible for board after the end of April". The intention of the parties that appellee's obligation to pay board ended on April 30th could not have been more plainly expressed.

The third part of the agreement is the one upon which appellant bases his argument: "As soon as the horse is sound, you will use your best efforts to sell it for whatever price you consider proper, provided this price is over $1,200.00. From the sale price you will return to me $1,500.00 and you are to keep any money you are able to get over and above that price". This part must be read in connection with the language of the next or fourth part of the agreement, and which in our view completely negates appellant's contention. The fourth part of the agreement provides: "Should the horse not be sold by the 30th of June you will buy the horse from me for $1,200.00". In this sentence appellant agreed that, if the horse was not sold by June 30th, he would buy it. There is no reference to the soundness of the horse. Where an act or event mentioned in a contract is not expressly made a condition precedent, it will not be so construed unless such clearly appears to be the intention of the parties: *Britex Waste Co. v. Schwab & Sons,* 139 Pa. Superior Ct. 474, 12 A. 2d 473.

By reading the third and fourth parts of the agreement together, we arrive at the result intended. Appellant was to sell a sound horse at a minimum price of $1,200.00, with the proceeds of the sale, up to $1,500.00, going to appellee. If appellant was unsuccessful in putting the horse in sound condition and selling it before June 30th, appellee was assured of the minimum price of $1,200.00. The parties themselves placed this interpretation on the agreement by their own summary in the last two sentences thereof, which are as follows:

"In other words, if you have sold the horse prior to the 30th of June I will get a minimum of $1,200.00 and a maximum of $1,500.00 if you have sold him above that amount. If you have not sold the horse before the end of June, you buy him from me for $1,200.00".

In brief, the concededly unambiguous language of the last portion of the instant agreement in no way indicates that the soundness of the horse was a condition precedent to the payment by appellant of the sum of $1,200.00. This clearly expressed intention of the parties must be given effect: *Gately & Fitzgerald v. Saladoff*, 174 Pa. Superior Ct. 56, 98 A. 2d 258. We are not authorized under the guise of interpretation, to construe this agreement in such a way as to modify the plain meaning of its words: *Mathewson v. Westinghouse Electric Corp.*, 185 Pa. Superior Ct. 284, 138 A. 2d 185; *Best v. Realty Management Corp.*, 174 Pa. Superior Ct. 326, 101 A. 2d 438.

Judgment affirmed.