## Capital Hospital Service v. Pomeroy's Inc.

*Robert R. Rice,* for plaintiff.

*John C. Dowling,* for defendant.

HERMAN, J., August 2, 1967.—This matter comes before us on plaintiff's motion for judgment on the pleadings.

The complaint alleges, in substance, that the parties executed a contract on February 1, 1958, in which plaintiff agreed to provide certain hospitalization benefits for the employes of defendant's Harrisburg store; and in return, defendant agreed to pay monthly to plaintiff a certain sum of money for each eligible employe who subscribed to the plan outlined in the agreement; that the agreement was to continue in effect until 12 o'clock midnight, January 31, 1959, and for succeeding yearly terms thereafter, unless terminated at the end of an agreement year by at least 30 days' written notice; that on May 27, 1963, defendant gave written notice to plaintiff that the agreement would be terminated, effective June 30, 1963; that plaintiff had fulfilled and was willing to continue to fulfill all the terms and conditions of the agreement until 12 o'clock midnight, January 31, 1964; that defendant has not fulfilled the terms and conditions of the agreement, in that it has failed to pay to plaintiff the subscription rates specified in the said agreement for any month subsequent to June 1963.

Plaintiff accordingly seeks damages in the amount of $533.19.

Defendant admits that the agreement runs from year to year, from February 1st to January 31st, but avers additionally that a subscriber's eligibility for benefits terminates upon such date as defendant specifies to plaintiff, and that the liability of defendant for subscription rates or premium payments continues only during the period that employes are enrolled and eligible for benefits. Defendant further avers that after June 30, 1963, plaintiff had no terms or conditions to perform since the eligibility of all subscribers for benefits had terminated, and that no premiums were due after June 30, 1963, because no employes were enrolled and eligible for benefits after that time.

As to liability, there are no facts in dispute, and the interpretation of the written contract is the only issue on the merits here involved. This, then, is a matter for the court to consider on a motion for judgment on the pleadings: Pennsylvania Rule of Civil Procedure 1034; Goodrich-Amram §1034(a)-2, 1034(b)-1; and this is true even though there remains a question on the amount of damages: Jeffrey Structures, Inc. v. Grimaldi, 186 Pa. Superior Ct. 437 (1958) ; Henry B. Warner & Company, Inc. v. McCormick, 89 D. & C. 251 (1954) ; Crissman v. S. J. Groves & Sons, Inc., 22 Lawrence 546 (1965) ; Goodrich-Amram §1034(b)-1.

This brings us to a consideration of the contract which forms the basis of this suit. Article XI provides, in part:

"This Agreement shall become effective at 12:01 A.M., February 1, 1958, and shall continue in force and effect until 12: o'clock Midnight, January 31, 1959, *and from year to year thereafter* subject to change or termination pursuant to the following provisions". There then follows a provision to terminate:

*"at the end of . . .* [a] *contract year by the giving of thirty (30) days written notice prior thereto"** in the event that the parties to the agreement cannot agree to a change in the agreement requested by either.

Another paragraph in this article provides for termination of the agreement *"as of the February 1 following . . .* [a] *disagreement by the giving of thirty (30) days written notice prior thereto"*, when, for the purpose of complying with the provisions of any laws, the company shall desire to increase, reduce or eliminate any of the benefits provided for in the agreement, and the parties cannot then agree on the amount of monthly payments.

Still another paragraph of this article provides for termination of the agreement by the company upon 30 days written notice to Blue Cross, in the event that Blue Cross is in default of its obligations under the agreement.

The agreement is silent, however, on any additional right to terminate at times other than at the end of a contract year, and it would, therefore, seem, as the parties clearly indicate, that "(the). . . agreement shall . . . continue in force and effect until 12 o'clock Midnight, January 31, 1959, *and from year to year thereafter"*.

Defendant's termination of the contract made here on June 30, 1963, is then, we believe, a breach of the contract.

A breach of contract may consist of the failure, without legal excuse, to perform *any* promise which forms any part of the contract, and it does not matter whether the failure to perform is great or small, or even whether any damage has been caused: 5 Williston, Contracts, §1288 (rev. ed., 1937) ; Restatement, Contracts §312 (1932). It is not only for the breach of

---

* Emphasis ours throughout.

*express* promises that a party may be liable, but for *implied* promises as well. If it is not expressly stated here it can be fairly implied that neither party, with the exceptions noted above, would terminate the contract, except at the end of a contract year. To hold otherwise would be to nullify the provisions in the contract providing for termination under certain conditions, as we have outlined above.

It is fundamental that, in construing an agreement, the intention of the parties is controlling, and that the intention must be ascertained from the entire instrument, and that every part of the agreement must be considered and given effect if possible; and, further, that an interpretation will not be given one part which will annul another part: Waldeman v. Shoemaker, 367 Pa. 587 (1951); Sharp v. McKelvey, 196 Pa. Superior Ct. 138 (1961).

From a consideration of the entire agreement in the light of the principles of law just mentioned, it seems clear to us that the intention of the parties was that the agreement should continue and not be terminated without cause, except on an anniversary date, and that the termination here by defendant was, therefore, a breach of the contract.

It is true, as defendant points out, that, like a summary judgment, a judgment on the pleadings should only be granted in clear cases and where there are no issues of fact: Goodrich-Amram §1034(b)-1. But there are no issues of fact here save the amount of damages, if any, that plaintiff suffered because of defendant's breach, and the breach is clear.

While Pa. R. C. P. 1034 is silent on the question of partial judgments, the rule does state that the court shall enter such judgment or order as shall be proper on the pleadings, and Goodrich-Amram §1034(b)-1 construes this to mean, in part, that "if the only question is the amount of damages, judgment should be

rendered and the question of damages reserved, to be assessed in a separate trial by jury".

In Jeffrey Structures, Inc., v. Grimaldi, supra, the Superior Court sustained the lower court's judgment on the pleadings for $5,000, but modified the judgment to permit further proceedings for $455 expenses, which were in dispute. This seems to recognize the propriety of awarding judgment when damages are still an issue to be resolved, but the liability is clear.

In Henry B. Warner & Company, Inc. v. McCormick, supra, and in Bennett v. Pennsylvania Electric Company, 24 D. & C. 2d 59 (1960), the courts awarded judgments on the pleadings under Pa. R. C. P. 1034, reserving the question of the amount of damages for determination by a jury.

Since it is our conclusion that there are no issues of fact on the question of liability, and that there is on the pleadings a clear breach of the contract, but that the amount of damages, if any, must be separately assessed, we arrive at the following.

ORDER

And now, August 2, 1967, judgment is directed to be entered against defendant, Pomeroy's, Inc., and in favor of plaintiff, Capital Hospital Service, damages to be assessed by a jury.