## Hoffman v. The Mount Lebanon Cemetery Company

*Gerber, Galfand & Berger*, for exceptant.
*Steinberg, Richman, Price & Steinbrook*, contra.

GOLD, DOTY and WEINROTT, JJ., October 16, 1968.—Mount Lebanon Cemetery Company (cemetery) was a nonprofit corporation organized over 40 years ago by four separate families, each of whom had a one-fourth interest in the ownership of the corporation. In order to preserve equality, each of the families was represented by an officer of the corporation, each of the families had two directors and a representative of each family was employed by the corporation at equal compensation.

This situation continued until September 3, 1965, when Beatrice Hoffman filed a complaint in equity alleging irregularities in the management of the cor-

poration and praying, inter alia, for the appointment of a receiver. Answers were filed by the corporation and the individual defendants. Thereafter, plaintiff's application for a preliminary injunction was heard by Gold, P. J. At the conclusion of plaintiff's case, the parties commenced negotiations with the aid of the court in an effort to settle their differences. Various meetings were held in chambers and separately by counsel and their respective clients. After much labor and turmoil, an agreement was finally concluded represented by a stipulation dated September 26, 1966. It was contemplated by the stipulation that the Pennsylvania nonprofit corporation would be converted into a profit corporation by a series of mergers starting with the formation of a Delaware nonprofit corporation, that the board of directors would be reduced to four, that each family would be represented on the board by one director and that the present officers would serve under employment contracts for a period of five years. To insure performance of the terms of the stipulation, the shares of stock to be issued to each family were to be thereafter held by a voting trustee whose duties and functions are not involved in this litigation.

It was likewise provided in the stipulation that the secretary, Marvin Abrams (Abrams) would continue to serve as stated therein at a salary of $75 a week instead of $150 a week and that the representatives of the other three families would be paid $150 per week. It was further provided in the stipulation that when a vacancy in the management took place, the vacancy could not be filled by a representative of the family, it being the intention of the parties that eventually the cemetery would be managed by a competent administrator, an outsider, to be retained by the corporation.

Dr. Jacob Goldstein, president of the cemetery, died on October 4, 1966. On October 18, 1966, Robert

L. Goldstein (Goldstein), oldest son of Dr. Jacob Goldstein, was employed by the corporation in place and stead of his father and on November 7, 1966, was elected as the president and director of the cemetery.

The new corporation received its charter on July 5, 1967, and as of that day commenced its existence as a profit corporation. In the meantime, the question of compensation to Goldstein and Abrams was brought to the attention of the board of directors. On November 7, 1966, the board of directors passed a resolution referring the matter of salary to Leonard L. Ettinger, Esq., the voting trustee. Mr. Ettinger informally concluded that Goldstein was entitled to compensation for the period from the date of the commencement of his employment to July 5, 1967, at a weekly rate of $150, amounting in all to $5,100. By common agreement, the question of compensation to Goldstein and Abrams was brought to the attention of Gold, P. J., who, in a letter dated August 9, 1967, likewise concluded that Goldstein and Abrams were entitled to compensation and directed that appropriate payments be made. As to Abrams, it was a ruling of the court that he was entitled to $150 per week until July 5, 1967, and $75 thereafter in accordance with the terms of the stipulation. In effect, the court decided that the terms of the stipulation became effective not on September 26, 1966, when it was executed, but on July 5, 1967, when the new profit corporation commenced to operate.

Thereafter, a petition was filed on behalf of Eva Cohen, to restrain the officers of the profit corporation from making payments to Goldstein and Abrams. An answer was filed. By stipulation, it was thereafter agreed that testimony for and against the petition would be heard by Gold, P. J., and that the determination whether Goldstein and Abrams were entitled to compensation would be determined by the court in-

stead of Mr. Ettinger. Subsequently, testimony was taken.

By order dated October 4, 1967, the court found in favor of Goldstein and Abrams and ordered cemetery to pay to them the sum of $150 weekly, ending as of July 5, 1967. Implicit in this order was a determination that Goldstein was not to be compensated after July 5, 1967, and Abrams was to receive only $75 per week after July 5, 1967. Exceptions to the order were filed by plaintiff on November 20, 1967. The matter was argued before a court en banc consisting of Judges Weinrott, Doty and Gold. On November 29, 1967, the court issued an order dismissing the exceptions of Eva Cohen. This appeal followed.

## ISSUE

Does the stipulation executed on September 26, 1966, preclude payments of any salary whatsoever to Goldstein and the payment of $150 weekly to Abrams for the period ending July 5, 1967?

## DISCUSSION

The significant clauses in the stipulation which control this issue are paragraphs 3, 9 and 13:

Paragraph 3 is as follows:

"Mt. Lebanon will merge with other corporations formed for that purpose in order that the uncertain nature of Mt. Lebanon may be finally settled. Specifically, it shall merge with a Delaware non-profit corporation, then with a Delaware profit corporation, and, if desirable, subsequently with a Pennsylvania profit corporation, each of which will be created for that purpose. All stock in said corporations shall be issued to the voting trustee who shall, during the term of this agreement, have the right and power to vote the shares to effectuate the purposes herein set forth, together with the right to amend the by-laws

at any meeting called for that purpose. The officers, employees and directors of the surviving corporation and their rights, privileges, compensation and emoluments shall be the same as provided herein for Mt. Lebanon. The voting trustee shall issue appropriate certificates to each shareholder."

Paragraph 9 is as follows:

"Mt. Lebanon shall enter into employment contracts for a period of five years and containing usual provisions of employment with Dr. Jacob Goldstein, George Schultz and Bernard Bodek for their full time employment at a salary of $140.00 per week. Marvin Abrams shall be employed at $75.00 per week to assist at the cemetery during holiday periods and at other times as required, but he shall not be obligated to keep regular hours on a daily basis. Dr. Jacob Goldstein, George Schultz and Bernard Bodek shall be reimbursed for expenses not to exceed $10.00 per week. The aforesaid salaries shall not be increased during the term of this Agreement.

"It is the intention of the parties that the company, in the future, shall be operated by a competent and experienced cemetery manager instead of by family 'representatives' as at present, and to that end, no person related to any shareholder, by blood or marriage who is not now employed by the company, shall hereafter be employed, except as herein provided, either in addition to, or to replace any present administrative or executive employe."

Paragraph 13 is as follows:

"The voting trust shall continue for a period of five years from its inception and thereafter terminate. Upon termination, all shares shall be returned to the individual shareholders, the within litigation shall be marked settled, ended and discontinued, and the voting trustee shall no longer have any powers or duties."

It is obvious that where the stipulation provides that Mt. Lebanon shall enter into employment contracts for a period of five years and containing usual provisions of employment with Dr. Jacob Goldstein, George Schultz and Bernard Bodek, it did not and could not refer to a period of employment which commenced with the date of the stipulation. The "Mt. Lebanon" obviously referred to was the new profit corporation which would *thereafter* come into existence, as there would be no point of employes who had been employed for a number of years entering into employment for five years with a corporation whose existence was to be short lived and was to pass out of the picture upon the creation of the profit corporation and the transfer of the assets of the non-profit corporation to the profit corporation.

The clause upon which plaintiff relies to deprive compensation to Robert L. Goldstein provides: "It is the intention of the parties that the company, *in the future,* shall be operated by a competent and experienced cemetery manager . . ." (our emphasis) and clearly indicates that the "company" referred to could only mean the new profit corporation to be organized and the words "in the future" could only relate to a state of facts which occurred subsequent to the formation of the new profit corporation and the employment by that new profit corporation of the several individuals specifically referred to in the stipulation to be employed. (emphasis supplied.)

The entire intent of the clause providing that upon the death of an employe there would be no family successor to his appointment was to control the future and this could take effect only upon the formation of the new profit corporation.

To indicate that the stipulation could take effect only at some future time, reference need be made to

paragraph 13, which specifically provides: "The voting trust shall continue for a period of five years from its inception and thereafter terminate."

The voting trust could come into effect only when the new profit corporation was organized and that too would continue for a period of five years, not from the date of the stipulation but from the date when the new profit corporation was organized, the stock issued and then entrusted to the voting trustee.

A clear reading of the stipulation indicates beyond any doubt that its operation was to be prospective and a reasonable construction of the stipulation is that, since it applied to the new profit corporation to be formed, the provisions of the stipulation could commence to be operative only at the time the new profit corporation started in business, i.e., July 5, 1967. This conclusion is the natural result not only of the foregoing facts but also of the fact that the new Pennsylvania profit corporation was to be created in accordance with paragraph 3 of the stipulation, a pertinent part of which reads as follows:

"Mt. Lebanon will merge with other corporations formed for that purpose in order that the uncertain nature of Mt. Lebanon may be finally settled. Specifically, it shall merge with a Delaware non-profit corporation, then with a Delaware profit corporation, and, if desirable, subsequently with a Pennsylvania profit corporation, each of which will be created for that purpose . . . The officers, employes and directors of the surviving corporation and their rights, privileges, compensation and emoluments shall be the same as provided herein for Mt. Lebanon."

Since it cannot be denied that every party in this case, including his or her counsel, knew that the new Pennsylvania profit corporation could be formed only after a series of complex mergers, it readily, therefore, can be understood that the applicable date which

controls must be July 5, 1967, and not September 26, 1966.

The whole intent of the stipulation was to provide for a situation which would keep the peace among the shareholders for a period of five years commencing with the date when the new profit corporation came into existence and commenced business.

The law in this case is controlled by Sharp v. McKelvey, 196 Pa. Superior Ct. 138 (1961), where, at page 142, the court said:

"In construing an agreement, it is fundamental that the intention of the parties is controlling, and that intention must be ascertained from the entire instrument: Waldman v. Shoemaker, 367 Pa. 587, 80 A. 2d 776. Each and every part of the agreement must be taken into consideration and given effect if possible, and an interpretation will not be given to one part which will annul another part."

Another case in point is Powell Appeal, 385 Pa. 467 (1956), where, at page 476, the court approved the rationale utilized by this court in reading paragraphs 3, 9 and 13 together in order to ascertain the true meaning and intent of the parties:

" 'It is a rule of universal application that in construing a contract each and every part of it must be taken into consideration and given effect if possible, and that the intention of the parties must be ascertained from the entire instrument. An interpretation will not be given to one part of a contract which will annul another part of it.' "

Therefore, the applicable law mandates that the three paragraphs of the agreement in question set forth hereinabove must be construed together, and when so construed, the intention of the parties is clearly manifest.

We, therefore, conclude that, after a thorough study of the case, after a complete review of the briefs

for and against the exceptions filed, the exceptions must be dismissed.