**U. S. Baird Corporation v.
G. G. Greene Manufacturing Co.**

*Rockwell O'Sheill,* for plaintiff.

*R. Pierson Eaton,* for defendant.

WOLFE, P. J., September 23, 1971.—This is an assumpsit action containing three counts.

In the first count, plaintiff demands $7,427.18 against both defendants; the second count claims $1,075.53 against defendant Wire and Metal Specialties, and the third, $19,818.93 against defendant Wire and Metal Specialties.

The second and third counts were settled by the parties for $13,346.69.

The case was heard nonjury and is now ready for decision.

At the pretrial conference, both parties agreed, due to a novation in settlement of counts two and three, the actual amount claimed by plaintiff in count one is now $11,700, witnessed by a promissory note. Further, at the conclusion of the evidence and argument of counsel, defendants acknowledged if there is liability to plaintiff it is joint against defendants notwithstanding the note was executed by defendant, G. G. Greene Manufacturing Company, solely.

This acknowledgment is supported by plaintiff's Exhibit 6, wherein defendant, Wire and Metal Specialties Corporation, acknowledged defendant, G. G. Greene Manufacturing Corporation, ceased operation as of January 1, 1963, at which time Wire and Metal Specialties recognized there was a conditional amount owing plaintiff of $11,700 arising from the purchase of a number 202 ribbon metal forming machine, serial number 4641-3.

The current action was brought, in part, for the purchase price thereof.

The issue in this case to be resolved is the intent of the parties on September 12, 1961, the date of execution of a note which was drafted by plaintiff and accepted by defendant G. G. Greene Manufacturing Corporation, which note provides:

"PROMISSORY NOTE

"$11,700.00                                    September 12, 1961
"We promise to pay to the order of the BAIRD MACHINE COMPANY Eleven thousand seven hundred and oo/100 dollars at Stratford, Connecticut. Payable in installments at the rate of $1.00 per thousand 'N.A.T.O. Clips' produced by us. Payments to begin with the production of the 6,000,001 Clip.
Payable on the 15th of each month for the previous month's production with no interest.

"G. G. GREENE MANUFACTURING CORP.
"By: s/G. G. Greene, Jr.
as Pres. & Treas."

The intent of the parties in the preparation and execution of the foregoing note is reflected in a letter between them predating it, to wit, March 9, 1961, providing:

"THE BAIRD MACHINE COMPANY
"1700 Stratford Avenue
Stratford, Connecticut
"March 9, 1961
"Mr. Hershel Kanovsky, General Manager
"G. G. Greene Manufacturing Corp.
"Warren, Pennsylvania
"Refers to: Your Purchase Order W109381
"Dear Mr. Kanovsky:
"In accordance with our telephone conversation

today in which you advised me that the Ordnance Department is reinstating your order for the production of six million clips, please be advised that we are agreeable to the following method of handling your payment to us for the BAIRD #202 Automatic Fourslide Ribbon Forming Machine and tooling. . . total price of $19,315.00:

"You will pay us $7,615.00 on shipment of the machine.

"Balance of $11,700.00, you will pay to us at the rate of $1.00 per thousand for the first eleven million seven hundred thousand clips beyond this initial order of six million.

"These amounts to be payable to Baird on the fifteenth of each month, based upon the previous month's production.

"In consideration of our agreeing to the deferred payment of $11,700.00 in this manner, G. G. Greene Manufacturing Corporation agrees to purchase any additional equipment required for manufacture of the above-referred-to N.A.T.O. clips from The Baird Machine Company.

"It is also understood and agreed that Greene will pay Baird a reasonable amount for the labor and costs involved in running the first one million clips here in our plant.

"Will you please indicate your acceptance of the above by signing the enclosed copy of this letter and returning it to us.

"Kindest personal regards,
            "Sincerely yours,
            "THE BAIRD MACHINE COMPANY
            "s/D.A. Blaisdell
            "Durwood A. Blaisdell
            "Executive Vice President

"DAB:rw

"The above accepted and agreed to this 14th day of March, 1961.

G. G. GREENE MANUFACTURING CORP..
By: s/Hershel Kanovsky:"

Consequently, and in accordance with the general terms of the offer and acceptance of March 9, 1961, the promissory note was executed.

At trial, plaintiff's evidence established it produced 3,800,000 clips for the government on behalf of defendants prior to shipping the machine in question to them. This was done under a mutual arrangement between the parties with the government arsenal at Frankford, Pa., in accordance with a renegotiation of a contract between defendant, G. G. Greene, and the government wherein the former had agreed to produce 6,000,000 clips known as "N.A.T.O." clips for the latter but was unable to commence on schedule due to plaintiff's failure to deliver the machine to defendants on time.

Plaintiff's further evidence reveals, and defendants do not dispute it, that defendants produced clips other than the N.A.T.O. type under various contracts with the government subsequent to the execution of the note.

Defendants do not deny the note is unpaid and acknowledge they have possession of the machine but assert they have no legal obligation to plaintiff for its purchase price under the terms of the note, since the 6,000,001th N.A.T.O. clip has not been produced by them on the machine and this, notwithstanding defendants have made numerous attempts to acquire contracts with the government for production of N.A.T.O. clips in addition to its original contract to produce 6,000,000.

Further, defendants assert, and there is no evidence

to the contrary, the other type clips known as 30 caliber, 10 round 5.56 cartridge manufactured by them for the government were not made on the machine in question and could not be so manufactured without retooling it, which has not been done.

The contract for interpretation is the one consummated by plaintiff's offer of March 9, 1961, and accepted by defendants on March 14, 1961. The note is merely evidence of the time and method of payment but reading the two instruments together, they are not inconsistent.

The contract clearly provides the total price for the machine of $19,315 was payable $7,615 on shipment and the balance of $11,700 at the rate of $1 per thousand for the 11,700,000 clips beyond the initial order of 6,000,000. In addition, defendant agreed to purchase any additional equipment required for the manufacturing of the referred to N.A.T.O. clips from plaintiff.

Although defendants acknowledge production of the other type clips, plaintiff did not establish they were manufactured by defendants for the government under the terms of the N.A.T.O. clip agreement. The testimony of plaintiff's president did establish, however, plaintiff was of the understanding defendants would produce more than 6,000,000 from his conversation with defendant's representatives. However, his testimony affirms that his company, plaintiff herein, "agreed to take a stand-by position on the $11,700 balance as far as the payment was concerned." This is the difficulty with plaintiff's burden in this case.

It is well established as was stated in Keystone Surgical Supply Company v. Bate, 196 Pa. 566, "when parties to an offer and acceptance show either by expressed words, or by their action that they regard the arrangement as preliminary only, and to be put into final shape thereafter, and subsequently they execute

a formal instrument in writing, the latter is the only contract, and the preliminary steps, however elaborate, go into the category of mere negotiations leading up to the final result."

Under the offer of March 9, 1961, there can be no doubt the parties had a mutual meeting of the minds that the subject matter to be produced was N.A.T.O. clips from the Baird machine. This must be so because the other type clips defendants manufactured were produced subsequent to this date; hence, the parties could not have any other type in mind.

Plaintiff advances the theory, and gave extensive evidence, defendants produced different clips under different contracts for the government. This argument overlooks another well-established rule of contracts that the rules of construction require a written instrument to be strictly construed against the maker. Galligan v. Arovitch, 421 Pa. 302 (1966); Hartford Fire Insurance Company v. Foulke, 134 F.Supp. 435, 436 (1955).

Here, plaintiff prepared the offer and selected the wording imposing the condition precedent to payment. In construing an agreement, each and every part thereof must be taken into consideration and given effect, if possible, and an interpretation will not be given to one part which will annul another part: Sharp v. McKelvey, 196 Pa. Superior Ct. 138 (1961). The subject matter of this contract goes to N.A.T.O. clips and no other.

Comparing the promissory note with the agreement creates no inconsistencies—"Payment on the Note" to begin with the production of the 6,000,001th clip. The courts are not authorized under the guise of interpretation to construe an agreement in a manner as to modify the plain meaning of its words: Mathewson v. Westinghouse Electric Corporation, 185 Pa. Superior Ct. 284 (1958).

Defendants' testimony consisted, in the main, of their attempts to acquire additional contracts with the government for production of N.A.T.O. clips and have been consistently unsuccessful. This testimony is not rebutted nor is there any reason for the court to discount it. From all of the evidence it appears that defendants have acted diligently and within the spirit of the contract between the parties to produce additional N.A.T.O. clips. Certainly, it would be within defendants' financial advantage to do so and, in respect to credibility, verisimilitude is with the defendants.

In this regard it was held in Miller v. Reading Hotel Company, 248 Pa. 541 (1915), wherein defendant agreed to pay plaintiff a certain sum of money out of the first moneys which the company should receive upon its stock subscriptions for construction of a hotel and $500 monthly thereafter until the whole of $2,350 shall have been paid, the making of each and all of the payments was conditioned upon the ultimate construction of a hotel by the company and a nonsuit was properly entered in the absence of proof that the condition had been performed.

In a similar case is Union Paving Company v. City of Philadelphia, 95 Pa. Superior Ct. 342 (1929), wherein plaintiff contracted with the city to lay pavement along the streetcar tracks. The contract provided the streetcar company should remove the blocks in the track area and subgrade to the bottom of the ties. This was not done and plaintiff was unable to complete his work. In such case, it was held the agreement that the streetcar company should prepare for the work of plaintiff was a condition precedent, and where such condition was in control of neither party to the contract, the failure to fulfill it gave neither any right under the contract with respect to the portion thereof which was left unfinished.

Thus, where a contract contains a condition prece-

dent to be performed by one not under control of either party, whose failure to perform the condition prevents the condition of the contract, neither party thereto can exact of the other the completion of his part of the contract or penalty for failure to complete.

We think this principle applies in the current case. It is apparent that plaintiff contemplated defendant's producing additional clips over and above the 6,000,001 figure.

Plaintiff's testimony establishes this without question, but the evidence also establishes that the failure of production upon which payment was hinged was not occasioned by defendant.

For these reasons, we hold that plaintiff has not carried his burden of proof by a fair preponderance of the evidence that it is entitled to payment under the terms of the contract and, therefore, the court makes the following order:

## ORDER

And now, September 23, 1971, judgment is entered in favor of defendants and against plaintiff. Exceptions are noted to plaintiff, and the prothonotary is directed to enter the verdict herein of record.