393 A.2d 669

**AREL REALTY CORPORATION, Appellee,**

v.

**MEYERS BROS. PARKING CORP., Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 20, 1977.

Decided Oct. 20, 1978.

Marvin Comisky, Philadelphia, with him Alan C. Gershenson, Philadelphia, for appellant.

David I. Grunfeld, Philadelphia, with him Samuel Phillips Lavine, Philadelphia, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

CERCONE, Judge:

This appeal arises from the order of the court below granting appellee, Arel Realty Corp. (hereinafter lessor), a declaratory judgment. The question presented is one of contract interpretation. Specifically, whether, for purposes of computing rent due under a commercial lease between the parties, appellant, Meyers Bros. Parking Corp. (hereafter lessee), is entitled to deduct from calculation of its gross receipts the sums it was paying for the Business Use and Occupancy Tax of Philadelphia.

The facts are not in dispute. On March 15, 1962, the parties entered into a 25½ year percentage lease [1] for a large parking garage located in lessor's property in center city Philadelphia. Under this lease, appellant-lessee pays lessor a guaranteed minimum annual rental of $110,000.00, plus 50% of its gross receipts from its operations in excess of $220,000.00.

In June of 1970, the Philadelphia City Council enacted an ordinance authorizing the Board of Education of the School

1. A percentage lease provides for both a minimum rental and, in addition, a specified percentage of gross sales or receipts. See generally annot. 58 A.L.R.3d 384.

District of Philadelphia to impose a tax on the use or occupancy of commercial or industrial real estate. In *Wanamaker v. Philadelphia School District et al.,* 441 Pa. 567, 274 A.2d 524 (1971), the Supreme Court addressed the issue of whether this tax, i. e., the Business Use and Occupancy Tax, was violative of the Uniformity Clause of the Pennsylvania Constitution as an unequal tax on real estate. In sustaining the constitutionality of the tax, the Court held it was a privilege tax on the use of real estate. In doing so, the Court explained, "[w]hile economically the incidence of the tax is on the property itself, its legal incidence is on the privilege of using, *making it a true excise tax.*" *Wanamaker v. Phil. Sch. Dist.,* supra, 441 Pa. at 575, 274 A.2d at 527. [Emphasis added.] The instant controversy arose after the decision in *Wanamaker* when lessee began deducting from its gross receipts the payments due under the Business Use and Occupancy Tax.

Lessor then filed a petition for declaratory judgment requesting the court to construe the lease and declare that lessee was not entitled to deduct the tax from its gross receipts. Lessee responded by filing preliminary objections in the nature of a demurrer. Following an amended petition and submission of memorandums by the parties, the lower court overruled the preliminary objections and granted declaratory judgment in favor of lessor. Lessee then appealed to this Court and we reversed and remanded on the basis that the lower court erred in granting a declaratory judgment without first affording lessee an opportunity to file an answer to the amended petition after the preliminary objections had been overruled. *Arel Realty Corp. v. Myers Bros. Parking Corp.,* 237 Pa.Super. 87, 346 A.2d 796 (1975).

On remand, lessee filed an answer and new matter to which lessor filed a reply. Thereafter, both parties filed briefs and a hearing was held on September 28, 1976. At this hearing counsel agreed that no further pleadings would be filed and no factual testimony would be proffered unless the court first found the lease ambiguous, in which case testimony would be presented to resolve the ambiguity.

On February 10, 1977, the Honorable Harry A. Takiff entered an opinion and order finding the lease unambiguous and granting lessor a declaratory judgment decreeing that lessee is not entitled to deduct from the determination of gross receipts the sums it was paying for the use and occupancy tax. The instant appeal followed.

As previously indicated, this controversy finds its genesis in a long-term percentage lease under which appellant-lessee pays appellee-lessor a guaranteed minimum annual rental of $110,000.00 plus 50% of its gross receipts in excess of $220,-000.00. While the parties agree that the pertinent provisions of the lease are unambiguous, they are in total disagreement as to the effect of those provisions regarding payment of the Philadelphia Use and Occupancy Tax. The crux of their dispute lies in the interpretation to be given the provision of the lease defining the term "gross receipts." That provision states:

> "Wherever and whenever the term 'gross receipts' may be used in this lease the same shall mean gross receipts *received* by the Lessee from its parking operations on the demised premises *exclusive of any sales, excise or other taxes of a like nature* . . ." [Emphasis added.]

Following the Supreme Court's decision in *Wanamaker,* supra, which held, *inter alia,* that the Philadelphia Use or Occupancy Tax is an excise tax, lessee began deducting from its gross receipts the sums it was paying for that tax and remitted 50% of the balance to lessor. Thus, in effect, making lessor obligated to pay one-half of the tax.[2]

Lessor, on the other hand, construes the lease in a different manner. While lessor concedes, as it must, that the use and occupancy tax is an excise tax, it contends that the key provision "exclusive of any sales, excise or other taxes of a like nature . . ." means only a certain class of excise

---

**2.** A simple hypothetical illustrates this result. Assuming gross receipts are $1,000.00 and the tax is $100.00, lessee would deduct the tax from gross receipts leaving a balance of $900.00 and then remit 50% of this sum, i. e., $450.00 to lessor as rent. Thus, lessor by receiving rent of $450.00 instead of $500.00 (50% of gross receipts), bears one-half of lessee's tax obligation.

taxes are excludable; namely, those that are similar to sales taxes. This position is predicated on the fact that a sales tax is usually imposed upon the purchaser and is measured by each sale, with the vendor (lessee) acting merely as a collecting agent for the taxing authority. See *Mellon Square Garage, Inc. v. Public Parking Authority of Pittsburgh,* 442 Pa. 229, 275 A.2d 654 (1971). Lessor notes that where the lessee is in essence simply a collector of the sales tax it receives no financial benefit or gain from this money and, therefore, may exclude this artificial income from computation of its gross receipts. See *Tax Review Board v. Esso Standard Division,* 424 Pa. 355, 227 A.2d 657 (1967). Lessor then points out that Bill No. 1860,[3] which amended Section 19–1800 of the Philadelphia Code and authorized the imposition of the use and occupancy tax, provides that the "tax is imposed on the user or occupier of real estate . ., is measured by the assessed value of the real estate;" and that the landlord, acting as agent of the School District, collects this use tax from the lessee. Noting the foregoing distinctions, lessor contends that this use and occupancy tax is therefore not similar to a sales tax and thus may not be deducted from lessee's gross receipts. Lessee, however, construes the term "exclusive of any sales, excise or other taxes of a like nature . . ." to mean that it is entitled to *deduct* from the determination of gross receipts any sales tax, *any excise tax* or any other taxes of a like nature (to sales or excise taxes). We conclude otherwise.

It is our opinion that the origin of lessee's mistaken contention can be traced to a fundamental misinterpretation of the provision defining gross receipts. To reiterate, the lease defines gross receipts, in relevant part, as "gross receipts *received* by the Lessee from its parking operations on the demised premises *exclusive* of any sales, excise or other taxes of a like nature . . ." [Emphasis added.] In our view this provision is susceptible of only one reasonable interpretation, namely, that any "sales, excise or other

3.  The relevant sections of Bill No. 1860 may be found in footnote 2 of *Wanamaker,* supra, 441 Pa. 569–571, 274 A.2d 524.

taxes of a like nature," may be excluded from gross receipts for the purposes of computing rent, *provided* that the tax was first necessarily included in the gross receipts received by the lessee. That is, the lease contemplates no exclusion for these designated taxes unless the lessee was first required by law to collect the taxes, in which case they would necessarily be part of the gross receipts received by lessee. More simply stated, unless the tax in question has first become a part of gross receipts it obviously cannot be subsequently excluded from gross receipts. As Judge Takiff persuasively reasoned:

"[T]he gross receipts definition stated in the Lease, insofar as it excludes taxes from such computation, refers to taxes which are assessed upon third parties' interests such as sales and the original excise taxes.[4] In the latter

"[4] Excise taxes are today understood to include a wide variety of taxes. In the modern sense an 'excise tax is any tax which does not fall within the classification of a poll tax or a property tax, and which embraces every form of burden not laid directly upon persons or property.' 71 Am.Jur.2d 28. In the original sense they were like taxes imposed upon the privilege of buying or selling, i. e., 'excise were something cut off from the price paid on the sale of goods as a contribution to the support of the government.' *Id.*"

category of imposts, the lessee is permitted under the lease to exclude artificial income, such as it receives as a conduit from persons taxed on their buying privilege and which it pays over to the state and hence is not to be exposed to additional rental payment generated from the sole fact of its receipt."

Instantly, the use and occupancy tax is exacted from the user or occupier of commercial real estate and is collected from the occupier by the landlord. *Wanamaker,* supra, footnote 2. Thus, the tax never becomes part of lessee's gross receipts and, therefore, lessee is not entitled to deduct from the determination of its gross receipts the sums paid by it for the tax.

In addition, as lessor points out, the inherent difficulty with lessee's position is a failure to recognize or acknowledge the distinction between the terms "deducted from" and "exclusive of." No authority need be cited for the proposi-.

tion that the term "exclusive of" means not taking into account or consideration; whereas the phrase "deducted from" suggests taking away or subtracting. This distinction is, in our opinion, critical. For the clause in question does *not* provide that "any sales, excise, or other taxes of a like nature" may be *deducted* from gross receipts received. On the contrary, it simply states that these imposts are *excluded* from the gross receipts received by lessee. In short, in computing its gross receipts lessee does not have to include the sums it may have paid or collected for any sales, excise or similar taxes. This does not mean, however, that lessee can also deduct from its gross receipts the monies it has paid or collected for these taxes. Before such a deduction would be permissible these monies would have to have formed a part of the gross receipts in the first place, e. g., a sales tax imposed upon the patrons of lessee's garage which because it is collected by lessee as an agent for the taxing authority necessarily comprises part of the gross receipts. As previously discussed, however, the use and occupancy tax never becomes part of lessee's gross receipts since it is not imposed upon the customers and, while the sums paid for this tax may be excluded from calculation of gross receipts, they cannot also be deducted therefrom.

In conclusion, then, we are convinced that the interpretation given the lease in question by the court below was in accord with the fundamental canons of contract construction. See generally *Robert F. Felte, Inc. v. White,* 451 Pa. 137, 302 A.2d 347 (1973); *Brown & Co. v. Raub,* 357 Pa. 271, 54 A.2d 35 (1947); *Bobali Corp. v. Tamapa Co.,* 235 Pa.Super. 1, 340 A.2d 485 (1975); *Mathewson v. Westinghouse Electric Corp.,* 185 Pa.Super. 284, 138 A.2d 185 (1958).

Order affirmed.

WATKINS, former President Judge, and HOFFMAN, J., did not participate in the consideration or decision of this case.