FRANK A. BURDICK, Respondent, *v.* LEIGH J. FULLER, Appellant.

Third Department, December 28, 1921.

Pleadings — where there is variance between contract and allegation of complaint contract must control — landlord and tenant — lease of farm for cash rent — injunction will not be granted to compel tenant to reside upon and to operate farm where lease contains no provisions so obligating tenant — landlord has adequate remedy at law — injunction deprives tenant of liberty without due process of law.

Where a contract on which an action is based is in writing and attached to the complaint as an exhibit, if there is a variance between the contract and the allegations of the complaint, the terms of the contract must control.

A tenant of a farm leased for cash rent cannot be restrained, at the suit of the landlord, from vacating and removing from the farm with his family before the expiration of the lease, where the lease contains no provision so obligating the tenant.

The landlord has an adequate remedy at law for damages for breach of the contract if the tenant violates any of its conditions.

Furthermore, a court of equity cannot direct the time and place of the tenant's labor, for to do so would deprive the tenant of his liberty without due process of law.

APPEAL by the defendant, Leigh J. Fuller, from an order of the Supreme Court, made at the Delaware Special Term and entered in the office of the clerk of the county of Delaware on the 31st day of October, 1921, denying defendant's motion to vacate or modify an injunction issued *ex parte.*

*Arthur E. Conner,* for the appellant.

*Lewis F. Raymond,* for the respondent.

WOODWARD, J.:

The complaint in this action alleges that on the 16th day of September, 1919, the plaintiff leased to the defendant a certain farm in the town of Franklin, this State, containing about 220 acres, for the term of one year " commencing March 1, 1920, and ending March 1, 1921, for the agreed price or rental of $25.00 per month to be paid in monthly payments; second party also to pay the road tax and also to furnish the grass seed required to be sown upon said premises during said term, and that in addition thereto, he would reside upon said premises and keep and maintain a dairy of cows thereon during said demised term," with other matters of detail not necessary to be here considered. It is then alleged that " on or about the first day of March, 1920, the said defendant, with his family, moved upon the said premises and took possession thereof with a dairy of about thirty cows," etc., and remained upon the premises and fully performed the conditions of the lease; that " prior to March 1, 1921, at the request of said defendant and consent of the plaintiff herein, said lease was renewed upon the same terms and conditions for one additional year, commencing March 1, 1921, and which term will end or expire on March 1, 1922, excepting that said defendant agreed, as an additional rent for the use of said premises, for said second demised term, that he would also pay the school tax assessed against said premises during said term," etc. But up to this point there is nothing involved in the present controversy, for it is further alleged that while

the defendant was residing upon this farm he importuned the plaintiff for a further lease of one year from the 1st day of March, 1922, to the 1st day of March, 1923, representing and stating to defendant (plaintiff) that he would occupy said premises aforesaid as he had been occupying the same and would reside thereon with his family and keep and maintain a dairy thereon and that plaintiff believed such representations and relying on the same " did enter into a written lease dated August 31, 1921, which lease aforesaid only contained a part of said agreement made between the said plaintiff and said defendant, a copy of which is hereto annexed and marked Exhibit B, did lease unto said second party hereto, said premises aforesaid for an additional term of one year from March 1, 1922, to March 1, 1923," and it seems to be the theory of the plaintiff that the defendant, having purchased another farm, and evidencing a determination to remove from the plaintiff's premises, the plaintiff may abrogate his written contract for the third year, compel the defendant to remain upon the farm until 1922, together with his family. The prayer for relief, which finds approval in the temporary injunction, is that the " defendant herein be enjoined and restrained from vacating said premises or removing therefrom all hay, straw and personal property now thereon or crops on said premises and also from selling, baling or pressing the hay thereon for the purpose of removing the same from said farm or any other crops thereon, and not permit the same to be done by any other person or by his servants, agents or assigns during the pendency of this action."

The temporary order is even broader than the demand for relief, for it provides not only that the defendant shall not remove crops, etc., but he is commanded not to " vacate and remove from said farm with his family and dairy and farm implements before March 1st, 1922, until the further order of this court."

The defendant moved to vacate or modify this order so as to permit the defendant to remove from the premises, but this motion was denied, except upon the condition that the defendant should enter into a bond, with a surety, for protecting the plaintiff in all his alleged rights under the contract, thus virtually holding that the defendant and his

family could be compelled to remain upon the plaintiff's farm for the period of the second lease. In other words, the effect of the order as it now stands is to hold that the defendant and his family, for a mere breach of contract on the part of the defendant, can be compelled to reside upon and to operate the plaintiff's farm in the manner supposed to be provided in the alleged contract, a part of which, we are told, is not even included in the writing.

Without going into the question of whether this contract is one which must be in writing, the plaintiff alleges in his complaint that it is in writing, and attaches it to the complaint as Exhibit A. The rule is well established that where this is done, if there is a variance between the contract and the allegations of the complaint, the terms of the contract must control. (*Queen* v. *Benesch*, 191 App. Div. 83, 84, and authority there cited; *Greeff* v. *Equitable Life Assurance Society*, 160 N. Y. 19, 29, and authorities there cited.) Looking to the contract we find that it provides, under date of September 16, 1919, as follows:

" Frank Burdick of the first part rents his farm to the parties of the second part L. J. Fuller the farm of the town of Franklin 220 acres the lowest oweing agreament, the trustee of the first part agreas to leave one-half of this years crop of hay and straw on the farm.

" The parties of the second part agreas to leave the same amount of or good hay or he finds.

" The parties of the first part agrea to pay all taxes, the rode tax, the part of the second part agreas to pay the rode tax, the parties of the second part agreas to furnish the grass seed, the parties of the first part agreas to take it or the parties of the second part leaves it. [Probably ' or ' should be ' as.']

" The parties of the second part agreas to pay his rent by the month, which is $25.00 a month, twenty-five dollars a month.

" MR. FRANK BURDICK.

" MR. L. J. FULLER.

" Leaving the contract or [as] before only Mr. L. J. Fuller is to pay the school taxes this agreement is from March 1, 1921 to 1922, March first." (Signed as above.)

Clearly this contract affords no justification for the order here under consideration. The defendant made no agreement to occupy the farm; certainly made no contract to bind his family to remain upon the farm. The plaintiff rented his farm to the defendant, under the original agreement of September 16, 1919, for no definite period; he simply let the defendant into possession and agreed that he would leave one-half of this year's crop of hay and straw upon the farm. The defendant on his part agreed to leave a like amount on surrendering the farm. The plaintiff agreed to pay all taxes, with the exception of the road taxes, and to " furnish the grass seed," and the plaintiff agreed to take the premises as the defendant left them. The defendant agreed to pay a rental of twenty-five dollars per month, for no agreed length of time, though the nature of the contract would suggest the next crop year. With the contract in this condition it appears that the parties added a clause some time prior to March 1, 1921, in which it was agreed that the contract should remain as before, except that the defendant undertook to pay the school taxes, and it was agreed that this renewal should begin on March 1, 1921, and continue to March 1, 1922. Apparently the contract of September, 1919, was continued in operation up to the 1st day of March, 1921, a period of considerably more than one year, and if it was the intention of the parties that this result should follow then the contract was one which should have been in writing. (Real Prop. Law, § 259.) The contract or agreement included in the complaint probably complies with this provision of the statute, and while it might have contained provisions which would have bound the defendant to occupy the farm it is entirely obvious that it does not, and there is no foundation for the order to rest upon. The Chinese have a proverb that " the palest ink is better than the most retentive memory," and matters reduced to writing are not to be enlarged by pleadings. If we look only to the contract which the parties have themselves made, and which the plaintiff offers for our consideration, the defendant is entirely within his rights in all that it is alleged he is intending to do. If he violates any of the conditions of his contract he may be called upon to answer for the breach, and, so far as appears from the record, he is prepared to

respond in damages to the amount claimed by the plaintiff. In any event neither the defendant nor his family may be deprived of their liberty because the defendant may not have performed his contract. " Liberty, in its broad sense as understood in this country," says the court in *Matter of Jacobs* (98 N. Y. 98, 106), "means the right, not only of freedom from actual servitude, imprisonment or restraint, but the right of one to use his faculties in all lawful ways, to live and work where he will, to earn his livelihood in any lawful calling, and to pursue any lawful trade or avocation; " and this liberty can be taken away only by due process of law, which does not mean the decree of a court of equity directing the time and place of labor. (See *Bailey* v. *Alabama,* 219 U. S. 219; *United States* v. *Reynolds,* 235 id. 133.)

The order appealed from should be reversed and the motion to dismiss the temporary injunction should be granted, with costs.

JOHN M. KELLOGG, P. J., COCHRANE, H. T. KELLOGG and VAN KIRK, JJ., concur.

Order reversed, with ten dollars costs and disbursements, and the motion to dismiss temporary injunction granted, with ten dollars costs.