220 F.2d 101
 McCLOSKEY & CO., a Corporation of the State of Delaware, Appellant,
v.
MINWELD STEEL CO., Inc., a Corporation of the State of Pennsylvania.
McCLOSKEY & CO., a Corporation of the State of Delaware, Appellant,
v.
MINWELD STEEL CO., Inc., a Corporation of the State of
Pennsylvania, and The Travelers Indemnity Company,
a Corporation of the State of Connecticut.
 Nos. 11421, 11422.
 United States Court of Appeals, Third Circuit.
 Argued Feb. 8, 1955.
Decided Feb. 28, 1955.
 
 George Walter Smith, Pittsburgh, Pa. (Smith & Hodel, Pittsburgh, Pa., on the brief), for appellants.
 Charles E. Kenworthey, Pittsburgh, Pa. (Walter T. McGough Reed, Smith, Shaw & McClay, Pittsburgh, Pa., on the brief), for appellees.
 Before GOODRICH, McLAUGHLIN and HASTIE, Circuit Judges.
 McLAUGHLIN, Circuit Judge.
 
 
 1
 Plaintiff-appellant, a general contractor, sued on three contracts alleging an anticipatory breach as to each. At the close of the plaintiff's case the district judge granted the defense motions for judgment on the ground that plaintiff had not made out a cause of action.
 
 
 2
 By the contracts involved the principal defendant,[1] a fabricator and erector of steel, agreed to furnish and erect all of the structural steel required on two buildings to be built on the grounds of the Hollidaysburg State Hospital, Hollidaysburg, Pa. and to furnish all of the long span steel joists required in the construction of one of the two buildings. Two of the contracts were dated May 1, 1950 and the third May 26, 1950. By Article V of each of the contracts 'Should the Sub-Contractor (the defendant herein) * * * at any time refuse or neglect to supply a sufficiency * * * of materials of the proper quality, * * * in and about the performance of the work required to be done pursuant to the provisions of this agreement * * *, or fail, in the performance of any of the agreements herein contained, the Contractor shall be at liberty, without prejudice to any other right or remedy, on two days' written notice to the Sub-Contractor, either to provide any such * * * materials and to deduct the cost thereof from any payments then or thereafter due the Sub-Contractor, or to terminate the employment of the Sub-Contractor for the said work and to enter upon the premises * * *.'
 
 
 3
 There was no stated date in the contracts for performance by the defendant subcontractor. Article VI provided for completion by the subcontractor of its contract work 'by and at the time or times hereafter stated to-wit:
 
 
 4
 'Samples, Shop Drawings and Schedules are to be submitted in the quantities and manner required by the Specifications, for the approval of the Architects, immediately upon receipt by the Sub-Contractor of the contract drawings, or as may be directed by the Contractor. All expense involved in the submission and approval of these Samples, Shop Drawings and Schedules shall be borne by the Sub-Contractor.
 
 
 5
 'All labor, materials and equipment required under this contract are to be furnished at such times as may be directed by the Contractor, and in such a manner so as to at no time delay the final completion of the building.
 
 
 6
 'It being mutually understood and agreed that prompt delivery and installation of all materials required to be furnished under this contract is to be the essence of this Agreement.'
 
 
 7
 Appellee Minweld Steel Co., Inc., the subcontractor, received contract drawings and specifications for both buildings in May, 1950. On June 8, 1950, plaintiff McCloskey & Co. wrote appellee asking when it might 'expect delivery of the structural steel' for the buildings and 'also the time estimated to complete erection.' Minweld replied on June 13, 1950, submitting a schedule estimate of expecting to begin delivery of the steel by September 1, and to complete erection approximately November 15. On July 20, 1950 plaintiff wrote Minweld threatening to terminate the contracts unless the latter gave unqualified assurances that it had effected definite arrangements for the procurement, fabrication and delivery within thirty days of the required materials. On July 24, 1950 Minweld wrote McLoskey & Co. explaining its difficulty in obtaining the necessary steel. It asked McCloskey's assistance in procuring it and stated that 'We are as anxious as you are that there be no delay in the final completion of the buildings or in the performance of our contract, * * *.'[2]
 
 
 8
 Plaintiff-appellant claims that by this last letter, read against the relevant facts, defendant gave notice of its positive intention not to perform its contracts and thereby violated same.[3] Some reference has already been made to the background of the July 24th letter. It concerned Minweld's trouble in securing the steel essential for performance of its contract. Minweld had tried unsuccessfully to purchase this from Bethlehem Steel, U.S. Steel and Carnegie-Illinois. It is true as appellant urges that Minweld knew and was concerned about the tightening up of the steel market.[4] And as is evident from the letter it, being a fabricator and not a producer, realized that without the help of the general contractor on this hospital project particularly by it enlisting the assistance of the General State Authority,[5] Minweld was in a bad way for the needed steel. However, the letter conveys no idea of contract repudiation by Minweld. That company admittedly was in a desperate situation. Perhaps if it had moved earlier to seek the steel its effort might have been successful. But that is mere speculation for there is no showing that the mentioned producers had they been solicited sooner would have been willing to provide the material.
 
 
 9
 Minweld from its written statement did, we think, realistically face the problem confronting it. As a result it asked its general contractor for the aid which the latter, by the nature of the construction, should have been willing to give. Despite the circumstances there is no indication in the letter that Minweld had definitely abandoned all hope of otherwise receiving the steel and so finishing its undertaking. One of the mentioned producers might have relented. Some other supplier might have turned up. It was McCloskey & Co. who eliminated whatever chance there was. That concern instead of aiding Minweld by urging its plea for the hospital construction materials to the State Authority which represented the Commonwealth of Pennsylvania took the position that the subcontractor had repudiated its agreement and then moved quickly to have the work completed. Shortly thereafter, and without the slightest trouble as far as appears, McCloskey & Co. procured the steel from Bethlehem[6] and brought in new subcontractors to do the work contemplated by the agreement with Minweld.
 
 
 10
 Under the applicable law Minweld's letter was not a breach of the agreement. The suit is in the federal court by reason of diversity of citizenship of the parties. Though there is no express statement to that effect the contracts between the parties would seem to have been executed in Pennsylvania with the law of that state applicable. In McClelland v. New Amsterdam Casualty Co., 1936, 322 Pa. 429, 433, 185 A. 198, 200, the Pennsylvania Supreme Court held in a case where the subcontractor had asked for assistance in obtaining credit, 'In order to give rise to a renunciation amounting to a breach of contract, there must be an absolute and unequivocal refusal to perform or a distinct and positive statement of an inability to do so.' Minweld's conduct is plainly not that of a contract breaker under that test. See also Dingley v. Oler, 1886, 117 U.S. 490, 6 S.Ct. 850, 29 L.Ed. 984. Restatement of Contracts, Comment (i) to Sec. 318 (1932) speaks clearly on the point saying:
 
 
 11
 'Though where affirmative action is promised mere failure to act, at the time when action has been promised, is a breach, failure to take preparatory action before the time when any performance is promised is not an anticipatory breach, even though such failure makes it impossible that performance shall take place, and though the promisor at the time of the failure intends not to perform his promise.'
 
 
 12
 See Williston on Contracts, Vol. 5, Sec. 1324 (1937), Corbin on Contracts, Vol. 4, Sec. 973 (1951).
 
 
 13
 Appellant contends that its letter of July 20, requiring assurances of arrangements which would enable appellee to complete delivery in thirty days, constituted a fixing of a date under Article VI of the contracts. The short answer to this is that the thirty day date, if fixed, was never repudiated. Appellee merely stated that it was unable to give assurances as to the preparatory arrangements. There is nothing in the contracts which authorized appellant to demand or receive such assurances.
 
 
 14
 The district court acted properly in dismissing the actions as a matter of law on the ground that plaintiff had not made out a prima facie case.[7]
 
 
 15
 The order of the district court of July 14, 1954 denying the plaintiff's motions for findings of facts, to vacate the judgments and for new trials will be affirmed.
 
 
 
 [1]
 The Travelers Indemnity Company, which posted performance bonds on two of the contracts, is a co-defendant in No. 11,422
 
 
 [2]
 This letter in full is as follows:
 Minweld Steel Company Incorporated
 'Shaler and Wabash Streets Pittsburgh 20, Pa.
 July 24, 1950.
 McCloskey & Company
 1620 Thompson Street
 Philadelphia 21, Penna.
 In re: New Hospital Buildings
 Hollidaysburg State Hospital
 Hollidaysburg, Pennsylvania
 Attention of J. C. McCloskey, Vice President
 Dear Sir:
 This will acknowledge receipt of your letter of July 20th, 1950, which was received by us today.
 Upon receipt of the architect's specifications, we completed the engineering and erection plans on the said specifications. Immediately after those details were available, we attempted to place orders for the steel with the Bethlehem Steel Company. Our order was held in the offices of the Bethlehem Steel Company for two weeks before we were notified that it could not be supplied. Since that time, we have tried the U.S. Steel Corporation and Carnegie-Illinois, both companies informing us that they were under contract for approximately one year and could not fulfill the order.
 The recent directive by the President of the United States, with which we assume you are familiar, has further tightened up the steel market so that at the present writing we cannot give you any positive promise as to our ability to obtain the steel or delivery dates.
 In view of the directive from Washington and the tightening up of the entire steel industry, we solicit your help and that of the General State Authority in aiding us to obtain the steel for these contracts.
 We are as anxious as you are that there be no delay in the final completion of the buildings or in the performance of our contract, but we have nowhere else to turn at the present time for the supply of steel necessary under said contracts, unless through your aid and assistance, and that of the General State Authority, a supplier can be induced to give us the materials needed.
 The U.S. Steel Corporation informs us that you have discussed this matter with them and are presently aware of our present difficulties.
 If steel is to be supplied to these hospital buildings by governmental directive, we feel that the steel should be supplied to us for completion under our contract.
 Very truly yours,
 Minweld Steel Company, Inc. J. A. Roberts Sales Manager
 JAR/fs
 c/c Travelers Indemnity Co.,
 Hartford, Conn.
 General State Authority, Harrisburg, Penna.
 
 
 [3]
 Plaintiff cancelled the contracts on July 26, 1950 on the ground that the July 24th letter constituted an admission of defendant's inability to perform the required work
 
 
 [4]
 The Korean War broke out on June 24, 1950
 
 
 [5]
 The Pennsylvania state agency which represented and owned the Hollidaysburg State Hospital
 
 
 [6]
 Bethlehem had originally submitted a bid in competition with Minweld. Its new proposals were dated July 28, 1950 and were finally accepted by McCloskey & Co. on August 7, 1950. The long span steel joists required by the third contract were procured from the Frederick Grundy Iron Works
 
 
 [7]
 Appellant also argues that the district judge erred in failing to make findings of fact. The judge's memorandum of decision gives his findings of fact and conclusions of law sufficiently to fully comply with the provisions of Rule 52, Federal Rules of Civil Procedure, 28 U.S.C.A