466 A.2d 132

**2401 PENNSYLVANIA AVENUE CORP. t/a 1528 Walnut Street Company**

**v.**

**FEDERATION OF JEWISH AGENCIES OF GREATER PHILADELPHIA, Appellant.**

Superior Court of Pennsylvania.

Argued Feb. 23, 1982.

Filed Aug. 19, 1983.

Reargument Denied Oct. 25, 1983.

Petition for Allowance of Appeal Granted Feb. 29, 1984.

230

232

Richard M. Squire, Philadelphia, for appellant.

Tom P. Monteverde, Philadelphia, for appellee.

Before SPAETH, BROSKY and BECK, JJ.

BROSKY, Judge:

Lessee/appellant appeals here from the dismissal of its exceptions and from judgment against it for $292,686.83 in rent. Following a bench trial, the Court of Common Pleas held that lessee had anticipatorily repudiated his lease and was liable to the lessor/appellee for the rent due. This

court finds that lessee did not, as a matter of law, anticipatorily breach the contract. Further, this court finds that it was the lessor who materially breached the lease by not tendering a timely delivery of the leasehold to the lessee. Therefore, the lessee is relieved of any liability under the lease and the judgment is vacated.

This case involves an action for breach of contract. The contract being a lease agreement duly entered into by the appellee, 2401 Pennsylvania Avenue Corporation (hereinafter lessor), and the appellant, Federation of Jewish Agencies of Greater Philadelphia (hereinafter lessee). The validity of the contract *per se* is not at issue. Rather, the primary issue is whether or not the lessee anticipatorily breached the contract prior to the time for performance—thus relieving the lessor of its obligations under the lease. The court below found that the tenant had anticipatorily breached the contract and had relieved the landlord of the duty to deliver the premises on the agreed upon date. As this Court finds, to the contrary, that the lessee did not anticipatorily breach the lease contract, the second issue is whether the lessor breached the lease by failing to tender a timely delivery of the leased premises. On this issue, the court below further found that if the tenant had not anticipatorily breached, the landlord's actions would constitute a material breach of the contract and would thus relieve the tenant of any liability under the contract. We agree with this *dicta* and make it the basis for our resolution of the second issue.

The appellant/lessee raises four questions on appeal. They are: (1) Whether the lower court erred as a matter of law in finding that the lessee had anticipatorily breached its lease with the lessor. The lessee contends that the evidence fails to support a finding that lessee would not or could not perform its sole affirmative obligation under the lease—the obligation to pay rent—if the lessor had tendered possession of the demised premises by the date upon which such possession was due. (2) Whether the lower court erred as a matter of law in awarding damages to the lessor when the

lessee's obligation under the lease was excused by the lessor's unjustified breach of the lease agreement. (3) Whether the lower court erred as a matter of law in awarding damages to the lessor when the plaintiff failed to properly exercise its duty to mitigate damages. (4) Assuming that the plaintiff was entitled to damages, whether the lower court's calculations of damages was erroneous. In this opinion, we need only reach the first two issues raised by appellant/lessee. We find that the lessee's actions do not support a finding of anticipatory breach and that the lessor's actions constituted a material breach of the lease agreement between the two parties. We reverse and vacate the judgment.

## Facts

In November of 1973, the lessee negotiated a lease with the lessor, owner of an office building at 1528 Walnut Street, Philadelphia. The lease, dated November 8, 1973, provided for a basic term of two years lasting from May 1, 1974 to April 20, 1976. An addendum to the lease reads, in pertinent part:

As you understand, the premises being demised are now occupied by Catalytic, Inc. whose lease expires August 31, 1974. They have indicated to us and we have advised you accordingly, that they will make every possible effort to give Federation possession as close to May 1st, as possible.

If, however, they are unable to move into their new quarters, it may be necessary for them to remain beyond May 1, 1974, on these floors, but in no event beyond August 31, 1974, which is the expiration date of their lease.

The parties do not contest that September 1, 1974 is the date on which each party's obligations under the lease commenced.

From May through August of 1974, the lessor sought an agreement from the lessee waiving its right to occupy on September 1 in the event that the current occupants would

be unable to vacate by August 31. The lessee consistently refused to grant the requested extension.

During July, 1974, the lessee negotiated the purchase of an office building, thus obviating its need to occupy the leased office space.

Due to delays in the preparation of its intended new facilities, the occupying tenant requested that the lessor grant it a three-month extension beyond the August 31 termination of its lease. Without receiving a waiver from the lessee, on August 5, 1974 the lessor entered into a formal extension agreement with the current occupant for three months commencing September 1, 1974.

The demised property was not tendered by the lessor to the lessee on May 1 nor on September 1. In fact, three floors of the building were not tendered until October 6, 1974 and the fourth floor was tendered at the end of October, 1974.

The court below held that the lessee had anticipatorily repudiated the lease. In so holding, the court concluded that the following declarations of the lessee prior to the week ending August 1, 1974, constituted "an absolute and unequivocal refusal to perform [on the contract] or a distinct and positive statement of inability to do so":

(a) On July 24, 1974 [lessee's] statement that "he was advised that *the lease would have no effect* because of an inability of Lessor to give possession in *May* as called for in the lease;"

(b) an inconclusive meeting with [lessee] on July 30, 1974, followed by

(c) a meeting with [lessee] on August 1, 1974, at which time [lessee] declined to grant an extension because "they were being advised by their attorney's [sic] that any extension given by Federation *would in essence acknowledge the validity of the lease,"* and

(d) on this same date [lessee] informing [lessor] that "the [lessee] *did not want to occupy* [the four floors], had *no*

*use* for it, and would *not consider any type of extension without a release* of liability from the lease.

(Emphasis in original.)

Further, the trial court's Finding of Fact number nine is relevant here. It states, "Up to and including August 31, 1974, *Federation* [lessee] *did not expressly state* to Walnut Street Co. [lessor] *that the former would not pay rental* for the four floors, nor was a demand made therefor by Walnut Street Co." (Emphasis added.)

## Scope of Review

■ It is well settled that the findings of the trial judge sitting as a trier of fact will not be disturbed unless there is a determination that those findings are not based upon competent evidence. His Conclusions of Law will also not be disturbed unless the trial judge based his decisions on an erroneous application of the law. *Courts v. Campbell*, 245 Pa.Super. 326, 369 A.2d 425 (1976); *Taylor v. Township of Wilkins*, 60 Pa.Cmwlth. 65, 430 A.2d 1014 (1981).

■ In this appeal, the lessee contends that the facts relied on by the trial court cannot justify the conclusion that an anticipatory breach occurred. Since the lessee challenges only the application of the facts to the law, we must determine whether the facts as given can, as a matter of law, justify the legal conclusions that the trial court drew from them.

## Anticipatory Breach

The first question raised is whether the preceding set of facts is sufficient, as a matter of law, to support the finding of an anticipatory breach of the lease by the lessee.

■ We begin with the observation that leases are in the nature of contracts and are thus controlled by principles of contract law. *Cusamano v. DiLucia*, 281 Pa.Super. 8, 421 A.2d 1120 (1980); *Pugh v. Holmes*, 253 Pa.Super. 76, 384 A.2d 1234 (1978), aff'd. as modified, 486 Pa. 272, 405 A.2d 897 (1979).

Under the law of Pennsylvania, conduct which constitutes an anticipatory repudiation of a contract is set forth in *McClelland v. Amsterdam Casualty Company*, 322 Pa. 429 at 433, 185 A. 198 at 200 (1938). *McClelland* states: "In order to give rise to a renunciation amounting to a breach of contract, there must be an absolute and unequivocal refusal to perform or a distinct and positive statement of an inability to do so."

The theory of anticipatory breach is further explained in *McAlpine v. Aamco Automatic Transmission, Inc.*, 461 F.Supp. 1232 at 1253 (E.D.Mich., 1978):

Pennsylvania law is well-settled that more than a threat of non-performance is needed before conduct can amount to an anticipatory breach of contract. The conduct must manifest an absolute and unequivocal refusal to perform. *Pennsylvania Law Encyclopedia*, Vol. 8, § 365, at 414; *McCloskey & Co. v. Minweld Steel Co.*, 220 F.2d 101 (3d Cir.1955); *McClelland v. New Amsterdam Casualty Co.*, 322 Pa. 429, 185 A. 198 (1936).

There are three theories upon which the trial court may have relied to support its finding that the lessee anticipatorily repudiated the lease. The first is that the lessee breached the contract by disavowing the existence of the contract or all liability under it. The second theory is that the lessee breached a duty, implied-in-law, to occupy the leased premises. The third theory is that the lessee breached a duty, based on the contract, to occupy the leased premises. Upon close scrutiny, none of these theories are supported by the facts as found by the trial court.

Pursuant to the first theory, the trial court relied on *William B. Tanner Co., Inc. v. W100, Inc.*, 528 F.2d 262 at 268 (3d Cir., 1975), to support its finding of anticipatory breach by the lessee. In that case, anticipatory repudiation was found where the defendant had "disavowed all knowledge of the very existence of the contracts" between the parties and defendant further declared that it "would not run any of [plaintiff's] spots" on the radio.

■ The trial court's reliance on *Tanner* is misplaced. The facts in the case at hand are sufficiently distinguishable so as to justify a different result. The lessee here never "disavowed all knowledge of the very existence of the contracts" in question. It merely voiced the opinion that the contract might already be void due to a possible breach by the lessor.[1] Further, and very importantly, lessee never declared that it would not perform its duties under the contract. This fact is supported by the trial court's finding that the lessee never expressly refused to pay rent for the leased premises.

■ Lessee's July 24 statement that "he was advised that the lease would have no effect" (characterized by the trial court as an "off-hand" opinion) and his August 1 statement that "any extension given would in essence acknowledge the validity of the lease" are insufficient to constitute the required high standard of conduct that is "an absolute and unequivocal refusal to perform." Further, a court will often look to words and conduct when determining whether it was reasonable for one party to assume that another party had anticipatorily breached. The fact here that the lessee continued to meet and negotiate with the lessor regarding the requested extension and that on August 1, the lessee stated that it would "not consider any type of extension without a release of liability for the lease" support the conclusion the lessee's words and conduct were not an "unequivocal" refusal to perform.

The two remaining theories upon which court below may have based its finding of anticipatory breach are that lessee

1. Cf. Murray, J.E., *Murray on Contracts,* § 209, (2d Rev.Ed.1974): "One of the more difficult questions ... is whether a good faith denial of liability under a contract should be treated as a sufficient basis for an action for anticipatory repudiation ... to the extent that courts have considered this matter, they suggest that there is no right to sue for anticipatory repudiation where the plaintiff is only able to show that the defendant in good faith denied that he was under any obligation to perform."

Although we find no Pennsylvania decision which clearly adopts this position, it is a concept which deserves consideration in Pennsylvania courts. It provides an analytical framework which could assist the trier-of-fact in difficult cases such as the one at hand or *Tanner.*

had a duty, implied-in-law or based on the contract, to occupy the leased premises and that its clear expression of intent not to occupy was sufficient to support a finding of anticipatory breach. Neither theory is supported in law or in fact.

■■■■ A tenant has no duty, implied-in-law, to occupy the leased premises. Absent a lease provision or agreement to the contrary, there are two basic incidents of a tenancy: the right to possession of the leasehold by the tenant and the corresponding right to receive rent payments by the landlord. *Oskow v. Smulkin,* 249 A.2d 520 (D.C.App., 1969). This proposition is supported in the Restatement, Second, of Property, introductory note to Chapter 12, "Tenant's Obligations that Inhere in the Landlord-Tenant Relationship" (1976):

> The obligations of the tenant inherent in the landlord-tenant relationship which arise without the aid of any express promise by the tenant are to pay the rent reserved, not to commit waste, and not to use the leased property for an illegal purpose.

> The obligations of the tenant to pay rent reserved in the lease is at the very heart of the landlord-tenant relationship.

*Id.* at 383–384. A tenant's duty to occupy demised premises is not implied-in-law, but is imposed only by a contractual provision. See, *Goldberg v. Pearl,* 306 Ill. 436, 138 N.E. 141 (1923); *Burdick v. Fuller,* 199 App.Div. 94, 191 N.Y.S. 442 (App.Div., 1921). This proposition is stated in Section 307 of Corpus Juris Secundum, "Landlord and Tenant":

> Accordingly, it is now the general rule that a lease becomes complete and takes effect on its execution, unless otherwise specified therein, and an entry by the lessee is not necessary to give it effect. In the absence of an agreement to reside on or occupy the demised premises, the tenant is not bound to do so...

51C C.J.S. *Landlord and Tenant* § 307 (1968).

■■■ As there is no duty implied-in-law which mandates that the lessee occupy the demised premises, the question is

whether the lessee had a contractual duty to occupy the leasehold. Since there is no provision in the contract which expressly states that lessee had a duty to occupy, we must determine whether such a duty arose out of the fact that the lease contained a "use and occupancy" clause. This question is answered in the negative because "use and occupancy" clauses are "permissive" rather than "mandatory" and do not impose a duty upon the lessee to occupy the premises.

■■ In *Dickey v. Philadelphia Minit-Man Corp.*, 377 Pa. 549 at 552, 105 A.2d 580 at 581 (1954), this Court gave the following as the applicable rule of law in Pennsylvania regarding a "use and occupancy" clause in a lease agreement:

> Generally speaking, a provision in a Lease that the premises are to be used only for a certain prescribed purpose imports no obligation on the part of the Lessee to use or continue to use the premises for that purpose; such a provision is a covenant against a non-complying use, not a covenant to use.

That opinion went on to state that this general rule had been followed uniformly by the trial courts of this state. The rule of law in Pennsylvania is that, unless otherwise specifically stated, a "use and occupancy" clause in a lease is a provision against a noncomplying use, *not* a covenant to use. This rule applies to the facts of this case.

■■ Clause One of the November 3, 1973 lease between the parties herein provided that "lessee will use and occupy [the premises] as offices for charitable organization and related uses." Nowhere in the lease do the parties agree that the use stated creates a mandatory obligation upon the lessee. In fact, Clause One indicates that the premises may be used for other than the stated purpose, upon the written consent of lessor. This language supports lessee's assertion that the "use and occupancy" clause in the lease in question was of the "permissive" rather than the "mandatory" variety, creating only a negative obligation not to use the property in a non-complying manner.

■ Thus, we find that the lessee did not have a contractual duty to occupy the leased premises. The lessee's only affirmative obligation under his lease was to pay the rent. As lessee never refused or indicated an inability to fulfill this obligation, the trial court erred as a matter of law in its finding that the lessee had anticipatorily repudiated its lease. Federation's actions, prior to September 1, 1974, did not constitute an anticipatory breach of its obligations under the lease.

### Material Breach of Lease by Lessor

This leads us to the second issue whether the lessor's granting of a lease extension to the current occupant constituted a material breach of the lease which justified the lessee's regarding the whole transaction as at an end. We answer this in the affirmative.

The evidence shows that lessor failed to deliver the demised premises by September 1, 1974, the last permissible date for delivery as specified in the lease. Lessee argues that, absent an anticipatory breach by itself, this failure by lessor to tender a timely delivery constituted a material breach of the lease and excused the lessee from its rental obligation and precluded the lessor from any recovery of damages.

The two questions raised are: (1) whether Clause 22 of the Lease agreement operated to relieve the lessor of its duty to deliver the premises on September 1, 1974 thereby binding the lessor to the lease; and, (2) whether lessor's grant of a three-month extension to the current occupant constituted a material breach of the lease.

Clause 22 of the lease agreement states in pertinent part: In the event that the herein demised premises are not ready for Lessee's occupancy at the time herein fixed for the beginning of the term of this lease, because ... of the failure or refusal of the occupant of the said demised premises ... to vacate and surrender up the same ... this lease ... shall not be affected thereby ...

Additionally, the addendum to the lease, stating the possibility of a September 1 commencement date, stated, "... but in no event [would the current occupant occupy the leasehold] beyond August 31, 1974, which is the expiration date of their lease."

■ In construing a lease agreement, it is fundamental that the intention of the parties is controlling, and that intention must be ascertained from the entire instrument. *Waldman v. Shoemaker*, 367 Pa. 587, 80 A.2d 776 (1951); *Sharp v. McKelvey*, 196 Pa.Super. 138, 172 A.2d 580 (1961).

■ We conclude, as did the trial court, that Clause 22 does not operate to relieve the lessor of its duty to tender delivery of the premises on the agreed upon date. The pertinent condition in Clause 22 (cited previously) did *not* occur. The continued occupancy by the current occupant was by formal agreement with lessor, not by that occupant's recalcitrance.

Further, reading the lease agreement as a whole to determine the intent of the parties, it is clear that they intended September 1, 1974 as a fixed date for the tender of the leasehold. Clause 22 referred only to a delivery later than May 1 but earlier than September 1.

■ An implied covenant of quiet enjoyment applies in regard to every lease of real property and is breached when the tenant's possession is impaired by acts of the lessor or those acting under him. *Pollock v. Morelli*, 245 Pa.Super. 388, 369 A.2d 458 (1976). In *Easton Theatres v. Wells Fargo*, 265 Pa.Super. 334, 401 A.2d 1333 (1979), appeal dismissed 498 Pa. 557, 449 A.2d 1372 (1982), this Court established the test to be applied:

Whether a breach is so substantial as to justify an injured party's regarding the whole transaction as at an end "is a question of degree; and must be answered by weighing the consequences in the actual custom of men in the performance of contracts similar to the one that is involved in the specific case." 4 Corbin, Contracts, § 946 (1951). *See also* Restatement Second of Contracts § 266

(Tent. Draft No. 8, 1973) (setting forth factors to be considered in determining whether a breach is material) . . .

*Ibid.* 265 Pa.Super. at 344, 401 A.2d at 1338.

■ Lessor's act of failing to tender possession of the premises by the last allowable date as fixed in the lease is the most extreme possible type of breach of the covenant of quiet enjoyment. As noted above, this failure was an express act of lessor's, chargeable to him, through his negotiating an extended lease with the occupying tenant. Thus, we concur with the trial court *dicta* that the lessor's three-month extension of the current lease was a material breach of the lease, discharging the lessee from its obligations under the agreement. Since we have found that lessee did not anticipatorily breach the lease contract and that lessor did materially breach, the judgment against lessee must be vacated.

The lower court's order holding the Federation of Jewish Agencies liable for damages in the amount of $292,686.83, plus interest, is vacated.

SPAETH, J., files a concurring statement in which BECK, J., joins.

BECK, J., also joins in the majority by BROSKY, J.

SPAETH, Judge, concurring:

■ While I join Judge BROSKY's opinion, I find it unnecessary to decide whether appellant had a duty to occupy the premises, for if there were such a duty, appellant could not have breached it, since the opportunity to do so was thwarted by appellee's conduct as lessor.

During the period July 25 through August 1, 1974, appellee and appellant engaged in discussions in which the appellee sought appellant's agreement to a short-term extension of the beginning of appellant's lease term so that Catalytic, the existing tenant, could remain on the premises until its new quarters were completed. In exchange, appellant sought relief from its liability under the lease. Appellant's

participation in these discussions suggests that it had not repudiated any obligation under the lease.

At one point in the negotiations, cancellation of the lease with a lump-sum payment by appellant was rejected by appellee. *See* R. 805a. In the final discussion between the parties—on August 1—appellee's agent stated that the next day he would propose additional ideas for possible compromise. R. 794a. The record contains no evidence that any such further proposals were made. Instead, on August 5 appellee acceded to Catalytic's demand for an extension of Catalytic's lease, without having obtained appellant's agreement to such an extension. As part of the extension agreement, R. 810a, Catalytic rented four additional floors from appellee for a term of two years, with three one-year renewal options. *See also* R. 774a. Thus appellee, by entering into the extension agreement, ended compromise negotiations with appellant. That being the case, it was impossible for appellant to repudiate any obligation it may have had under the lease to occupy the premises.