J-A25041-18

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| TSUNG TSIN ASSOCIATION | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LUEN FONG PRODUCE, INC., | : | |
| | : | |
| Appellant. | : | No. 3724 EDA 2016 |

Appeal from the Judgment Entered, November 29, 2016,
in the Court of Common Pleas of Philadelphia County,
Civil Division at No(s):  No. 01813 October Term, 2015.

BEFORE:  PANELLA, J., DUBOW, J., and KUNSELMAN, J.

MEMORANDUM BY KUNSELMAN, J.:                    **FILED APRIL 09, 2019**

This landlord/tenant dispute arises out of a long-term, commercial lease for a grocery store in Philadelphia's Chinatown.  To resolve it, we must decide how the statute of limitations impacts a multi-year rental, when the landlord waits until the lease is almost expired to sue for all unpaid, additional rent, going back nearly a decade.  The trial court allowed the landlord, Tsung Tsin Association to recover four years of damages.  The jury found that the tenant, Luen Fong Produce, Inc., breached the lease by not paying various forms of additional rent and awarded $38,558.00 to the landlord. The tenant appeals from that judgment.[1]

_____

[1] The tenant initially tried appealing "from the May 19, 2016 Jury Verdict, and related Trial Court Findings . . . ."  Notice of Appeal, 6/17/16, at 1.  We

We hold that, as a matter of law, the 2003 lease supplanted the parties' original 1995 lease, and under the 2003 lease and the facts of record, the tenant owed additional rent only for excess real estate taxes from June 2011 to the date of trial. That amount was $19,523.90. Thus, we shall affirm the judgment in favor of the landlord, but modify the amount to $19,523.90.

## I.    FACTUAL BACKGROUND

The facts and procedural history of this case are fairly straightforward. In 1995, the landlord leased the first floor of its building to the tenant, a wholesaler of produce. *See* P-2 at 1. The parties executed a form lease and an addendum that altered many of the lease terms. *See* P-3 at 9-10.

Then, in 2003, the parties entered into a new lease, using the same form as the one they used in 1995, but without the typed alterations. *See* P-

---

quashed that first appeal as premature. *See* Order of Superior Court, 8/23/2016.

Its second notice of appeal was also, technically speaking, premature. *See* Pennsylvania Rule of Appellate Procedure 301. However, under *Mancini v. Morrow*, 458 A.2d 580 (Pa. Super. 1983), and *Johnston the Florist v. TEDCO Construction Corp.*, 567 A.2d 511, 515 (Pa. Super. 1995) (*en banc*), we will not quash the tenant's second appeal, because the landlord caused the Prothonotary of Philadelphia County to enter final judgment on the docket.

That said, the better practice would have been for the tenant to wait until the Prothonotary had reduced the denial of post-trial motions to a final judgment. At that point, the 30-day filing period under Pennsylvania Rule of Appellate Procedure 903 would have begun to run. During that time, the tenant should have filed its notice of appeal, appealing from the final judgment, not from the order denying post-trial motions or the jury's verdict.

4 at 1; *see also* N.T., 5/17/16, at 212. The 2003 lease was originally for five years, with an option for a four-year extension. *See* P-4 at 1. In 2009, the parties signed an addendum, extending the 2003 lease for ten years – to June 30, 2019. *See* P-4, at 1.

There is no dispute that the tenant paid the monthly base rent throughout the 20 years of the parties' contractual relationship. The parties only disagree on whether the tenant should have paid additional rent and, if so, how much. The landlord claims the tenant owed additional rent in the form of increases in property taxes, use and occupancy taxes, water, sewage and gas. The tenant claims that it paid the use and occupancy taxes. Additionally, the tenant claims the landlord cannot seek damages dating back twelve years, and disputes other additional rents due.

The landlord sued the tenant in the Philadelphia Municipal Court on June 6, 2015 for nonpayment of additional rent and won. The tenant appealed to the Court of Common Pleas of Philadelphia County. In its Complaint, the landlord sought twelve years' worth of additional rent. In response, the tenant raised the four-year statute of limitations for contract actions in Pennsylvania.

The case proceeded to a jury trial in May of 2016. The trial court partially limited the landlord's claim as a matter of law; applying the statute of limitations for contract claims, the court limited the landlord's damages to the four years preceding the date on which it filed suit. Thus, the landlord could only seek additional rent from June 6, 2011 forward.

At trial, the landlord presented evidence of the various forms of additional rent it claimed the tenant owed. It presented evidence of excess real estate taxes from 2004 to 2011. It presented water bills for the building from 2007 through 2016. It presented evidence of gas usage from 2011 through 2016. It presented evidence of use and occupancy taxes for 2013, 2014, and 2015. Finally, the landlord presented a claim for accelerated rent through the end of the contract term.

The jury returned a verdict finding the tenant in breach of contract and awarded the landlord $38,558.00 in damages.[2] Both parties filed post-trial motions, which the trial court denied. The tenant appealed.

## II. ANALYSIS

In its brief, the tenant raises six issues, which we have consolidated to the following three claims. Essentially, the tenant first claims the statute of limitations and/or laches bars the landlord's claims entirely. Second, the tenant claims the landlord did not establish a prima facie case of breach of contract. Finally, the tenant claims the trial court should have molded the verdict consistent with the evidence at trial.

A.    *The Trial Court Properly Applied the Statute of Limitations and Rejected the Doctrine of Laches.*

---

[2] The jury also ruled in favor of the landlord on various counterclaims that the tenant had levied, but the tenant has not appealed that part of the verdict.

First, the tenant claims the landlord filed this lawsuit too late. Thus, it raises the statute of limitations and/or the doctrine of laches as a defense to bar all of the landlord's claims for additional rent.

Initially, the tenant challenges the trial court's application of the statute of limitations for contract actions. The trial court applied the statute and limited the landlord's claims to four years prior to the date suit was filed: June 6, 2011. The tenant believes the statute of limitations required the landlord to file suit by June of 2007, four years after the first time the tenant failed to pay additional rent under the 2003 lease.

The applicability of a statute of limitations to an alleged cause of action is a question of law; therefore, our scope of review is plenary, and our standard of review is *de novo*. **Kessock v. Conestoga Title Ins. Co.,** 194 A.3d 1046, 1056 (Pa. Super. 2018)

Pennsylvania's Landlord and Tenant Act of 1951 mandates that actions to collect rent proceed under the common law of contracts. "Any landlord may recover from a tenant rent in arrears in an action of assumpsit as debts of similar amount are by law recoverable." 68 P.S. § 250.301.[3]

_____

[3] We note that while the law of contracts governs unpaid rent, equity governs whether a landlord can collect interest on the amount of unpaid rent. The law provides:

> In any such action, interest at the legal rate on the amount of rent due may be allowed if deemed equitable under the circumstances of the particular case.

Generally, an action for breach of a contract has a four-year statute of limitations. ***See*** 42 Pa.C.S.A. § 5525(a)(8); ***Packer Soc. Hill Travel Agency, Inc. v. Presbyterian Univ. of Pennsylvania Med. Ctr.***, 635 A.2d 649, 652 (Pa. Super. 1993) (holding that the statute of limitations applies to all actions on contracts not under seal is four years).

"The time within which a matter must be commenced . . . shall be computed . . . from the time the cause of action accrued." 42 Pa.C.S.A. § 5502; ***see also Cucchi v. Rollins Protective Services Co.***, 546 A.2d 1131, 1144 (Pa. Super. 1988), *rev'd on other grounds*, 574 A.2d 565 (Pa. 1990). In general, a contract action accrues at the moment a party breaches. ***Id.; Sadtler v. Jackson-Cross Co.***, 587 A.2d 727, 731 (Pa. Super. 1991).

Here, the landlord filed suit on June 6, 2015 and sought damages for unpaid rent going back to 2004. The trial court applied Section 5525 to bar recovery of any damages flowing from alleged breaches prior to June 6, 2011 – i.e., four years before the landlord filed suit. The parties and the common-pleas judge referred to this as the "four-year-look-back" period.

We agree with the trial court approach. In its Complaint, the landlord alleged the tenant breached the 2003 lease (and its 2009 addendum) by not

---

68 P.S. § 250.301.

We also note that the trial court properly dismissed the landlord's claim for unjust enrichment, because the parties had a written contract.

- 6 -

paying various forms of additional rent. That lease dictated when each form of additional rent was due.

For example, the tenant agreed to pay the real estate taxes "assessed or imposed . . . in excess of and over and above those assessed or imposed at the time of making this lease . . . on or before the first day of July of each and every year." P-4 at 1, ¶ 6(b) (emphasis added). Thus, the contract fixed a certain time for payment of the additional rent until the obligations terminated at the end of the lease.

The landlord alleged that tenant made none of these payments. Essentially, the landlord claims that the tenant committed multiple, recurring, annual breaches. Assuming the tenant owed additional rent, the landlord claimed each failure to pay constituted a new breach. The tenant's failure to pay the 2003-04 real estate tax on July 1, 2004 was one breach of paragraph 6. Failure to pay the 2004-05 real estate tax on July 1, 2005 was another, and so on each year. Thus, failure to pay the 2010-11 real estate tax on July 1, 2011 was a new breach.

The July 1, 2011 breach gave rise to a new cause of action, which accrued on July 2, 2011 for Section 5502 purposes. The landlord had four years under that statute to sue the tenant for the July 2, 2011 breach — i.e., until July 2, 2015. The landlord sued on June 6, 2015, about four weeks before the statute of limitations expired. Thus, the claim for damages arising from the tenant's failure to pay the 2010-11 real estate taxes on July 2, 2011 was timely.

The same is true of all the alleged breaches for additional rent which occurred on or after June 6, 2011 — i.e., four years before the landlord commenced this action. Where, as here, a tenant has allegedly breached a series of reoccurring obligations to pay rent over the life of a lease, the statute of limitations, practically speaking, creates a "four-year-look-back" period. In short, 42 Pa.C.S.A. § 5525(a)(8) time-barred all causes of action arising prior to June 6, 2011, while any causes of action, accruing from a breach on or after that date, remained legally viable.

The tenant's suggestion, that the statute of limitations bars the landlord from recovering any rent at all after 2007, would create the absurd and unjust result that the landlord could never collect any additional rent – past, present, or future. The tenant's construction would excuse all subsequent breaches, based solely on the landlord's failure to file a lawsuit to collect additional rent by 2007. We do not think that the Legislature intended for long-term tenants to occupy premises rent-free, when a landlord waits more than four years into a decade-long lease to sue. In fact, by applying the "four-year-look-back" as the trial court did, this tenant received an unforeseen windfall of occupying the premise without paying any additional rent from 2003 through 2011. But this good fortune does not mean that the tenant can escape the obligation to pay additional rent forever.

We conclude that the trial judge properly applied the statute of limitations by limiting the time period for which the landlord could seek

damages to four years prior to the date the landlord filed the lawsuit. **See** 42 Pa.C.S.A. § 5255(a)(8).

The tenant also claims the trial court erred in not applying the doctrine of laches to bar the landlord's claims for additional rent. The tenant claims it suffered prejudice in defending this case, because of the landlord's inordinate delay in filing suit.

The trial judge refused to enforce the equitable doctrine of laches against the landlord's contract action. As we indicated above, the Landlord/Tenant Act requires landlords to file an action at law to recover unpaid rent. **See** 68 P.S. § 250.301.

We have previously held, "Laches is not a defense in a court of law." **Leedom v. Spano**, 647 A.2d 221, 228 (Pa. Super. 1994). Thus, the trial judge correctly rejected the tenant's defense of laches.

Accordingly, the tenant's first claim warrants no relief.

B. *The Landlord Offered Sufficient Proof to Show the Tenant Owed Excess Real Estate Taxes Only.*

Next, we consider the tenant's claim that it is entitled to judgment notwithstanding the verdict on the landlord's breach of contract claims.

When reviewing a trial court's denial of judgment notwithstanding the verdict (JNOV), this Court's standard of review varies based upon what type of error the appellant has alleged:

> A JNOV can be entered upon two bases: (1) where the movant is entitled to judgment as a matter of law; and/or, (2) the evidence was such that no two reasonable minds could disagree that the verdict should have been rendered

for the movant. When reviewing a trial court's denial of a motion for JNOV, we must consider all of the evidence admitted to decide if there was sufficient competent evidence to sustain the verdict. In so doing, we must also view this evidence in the light most favorable to the verdict winner, giving the victorious party the benefit of every reasonable inference arising from the evidence and rejecting all unfavorable testimony and inference. Concerning any questions of law, our scope of review is plenary[, and our standard is *de novo*]. Concerning questions of credibility and weight accorded the evidence at trial, we will not substitute our judgment for that of the finder of fact. If any basis exists upon which the court could have properly made its award, then we must affirm the trial court's denial of the motion for JNOV. A JNOV should be entered only in a clear case.

***Tong-Summerfrod v. Abington Memorial Hospital***, 190 A.3d 631, 640 (Pa. Super. 2018) (quoting ***V–Tech Services, Inc. v. Street***, 72 A.3d 270, 275 (Pa. Super. 2013). Here, the tenant challenges whether the landlord presented sufficient evidence, as a matter of law, to support its breach of contract claims; thus, our scope of review is plenary, and our standard of review is *de novo*.

"[L]eases are in the nature of contracts and are thus controlled by principles of contract law." ***2401 Pennsylvania Ave. Corp. v. Federation of Jewish Agencies of Greater Philadelphia***, 466 A.2d 132, 136 (Pa. Super. 1983), ***aff'd***, 489 A.2d 733 (Pa. 1985); ***see also Pugh v. Holmes***, 405 A.2d 897 (Pa. 1979). To "decide if there was sufficient, competent evidence to sustain the verdict," we turn to the law of contracts to establish what the landlord had to prove for each Count in its Complaint. ***Tong-Summerford***, *supra*.

This Court has said that the elements for breach of contract are "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages." ***CoreStates Bank, N.A. v. Cutillo***, 723 A.2d 1053, 1058 (Pa. Super. 1999).

Here, the landlord's Complaint alleges the tenant promised to pay additional rent under the lease and failed to do so. The parties agree that the 2003 lease, as extended in 2009, governs their relationship; they do not dispute that a contract existed.

As we will discuss, our review of the contract and the evidence of record indicates that the tenant was obligated to pay excess real estate taxes, and it failed to do so. Our review also indicates that the remaining claims for additional rent are meritless. We conclude that the trial court properly denied the tenant's request for JNOV on Count II of the Complaint, but erred in denying JNOV on Counts I, III, IV, V and VI.

In Count II of the Complaint, the landlord seeks damages for a breach of contract due to the tenant's failure to pay the excess real estate taxes.[4] In

---

[4] In the Complaint, the landlord never actually alleged this specific duty or breach on the part of the tenant. Instead, in Count II, the landlord repeated language from Count I that the tenant "was required to pay for **water and sewer** under the 1995 Lease, 2003 Lease, and addendums thereto." Complaint at 3 (emphasis added). Even so, in the WHEREFORE clause of Count II, the landlord correctly demanded judgment "in the amount of $27,020.83 for **real estate taxes** . . . ." *Id*. (emphasis added). Because the tenant did not preliminarily object to this defect, we will overlook this error.

clause (b) of paragraph six in the lease, the tenant agreed to pay these taxes as additional rent:

> (b) **[Tenant] further agrees to pay as rent** in addition to the minimum rental herein reserved **all taxes assessed or imposed upon the demised premises and/or the building of which the demised premises is a part during the term of this lease, in excess of and over and above those assessed or imposed at the time of making this lease**. The amount due hereunder on account of such taxes shall be apportioned for that part of the first and last calendar years covered by the term hereof. The same shall be paid by [Tenant] to [Landlord] on or before the first day of July of each and every year.

P-4 at 1, ¶ 6 (emphasis added).

The landlord submitted a handwritten chart that listed all of the tenant's alleged non-payments of excess real estate taxes. The top of the first page listed the building's address and then included the following table, which listed the real estate taxes for the base year, 2003, as $4,969.02, the principle amount of tax bill for each year thereafter and a calculation of the excess amount owed by the tenant:

| TAX YEAR | PRINCIPAL | BASE YEAR | EXCESS/OVER PRINCIPAL |
|---|---|---|---|
| 2004 | 6,021.48 | 4,969.02 | 1,052.46 |
| 2005 | 6,021.48 | 4,969.02 | 1,052.46 |
| 2006 | 6,021.48 | 4,969.02 | 1,052.46 |
| 2007 | 6,021.48 | 4,969.02 | 1,052.46 |
| 2008 | 6,082.30 | 4,969.02 | 1,113.28 |
| 2009 | 6,090.37 | 4,969.02 | 1,121.35 |
| 2010 | 6,021.48 | 4,969.02 | 1,052.46 |
| 2011 | 6,017.51 | 4,969.02 | 1,648.49 |
| 2012 | 6,872.53 | 4,969.02 | 1,903.51 |
| 2013 | 7,119.55 | 4,969.02 | 2,150.53 |
| 2014 | 11,820.01 | 4,969.02 | 6,850.99 |

| 2015 | 11,939.40 | 4,969.02 | 6,970.38 |
|---|---|---|---|
| | | **TOTAL** | $ 27,020.83 |

P-7 at 1.

Additionally, Ms. Yeung, the landlord's public relations director, testified that the landlord was submitting this chart so it could receive "reimbursements." N.T., 5/17/16, at 77. From that testimony, combined with the chart, the jury could have reasonably concluded that the landlord paid the full real estate taxes for over a decade. Thus, the trial court properly denied tenant's request for JNOV on Count II because the landlord established that the tenant owed additional rent in the form of increased real estate taxes for 2011 through 2015.

The landlords remaining claims for additional rent fail. First, in Count I, the landlord claimed additional rent for unpaid water and sewage bills. It relied on the following language from the 2003 lease:

> (d) [Tenant] further agrees to pay as additional rent, ***if there is a metered water connection to the said premises***, all charges for water consumed upon demised premises in excess of the yearly minimum meter charge and all charges for repairs to the said meter or meters on the premises, whether such repairs are made necessary by ordinary wear and tear, freezing, hot water, accident or other causes, immediately when the same become due.
>
> (e) [Tenant] further agrees to pay as additional rent, ***if there is a metered water connection to said premises***, all sewer rental or charges for use of sewers, sewage system, and sewage treatment works servicing the demised premises in excess of the yearly minimum of such sewer charges, immediately when same become due.

P-4 at 1, ¶ 6 (emphasis added).

While it appears the tenant agreed to pay for water and sewer changes, both of those obligations were conditioned upon there being a separate metered water connection to the premises the tenant was leasing. The landlord failed to produce evidence of a separate metered connection to the premises occupied by the tenant. Ms. Yeung, the landlord's witness, testified that there was only one water meter for the building. N.T., 5/17/16, at 109. There is no other evidence of record to prove that there was a metered water connection for the first floor to meet the condition precedent of clauses (d) and (e). As a matter of law, the tenant owed the landlord nothing under clauses (d) and (e) of the 2003 lease for water or sewer. Accordingly, the tenant was entitled to JNOV on Count I. The trial court erred by not granting the tenant that judgment, as a matter of law.

Similarly, in Count V of the Complaint, the landlord sought damages because the tenant failed to pay the gas bill. The tenant was required to pay for gas under the addendum to the 1995 lease. *See* P-3, at 5. However, that lease expired when the parties entered the 2003 lease. The 2003 lease never mentioned gas. As such, the landlord cannot succeed on this Count, and the tenant was entitled to JNOV as matter of law.

Ironically, in Count III, the landlord sought damages for the tenant's failure to install "separate gas, water, and electric services under the 1995 Lease, 2003 Lease, and addendums thereto." Complaint at 4. However, nothing in the 2003 lease required the tenant to install such utilities separate and apart from the landlord's original connections for the building. That

- 14 -

obligation was only in the addendum to 1995 lease, which expired in 2003.[5] As such, the tenant was entitled to judgment as a matter of law on this Count.

In Count IV, the landlord sought additional rent in the amount of $15,000 for unpaid U&O taxes.[6] Unlike Counts I, III and V, where the landlord could not show that the tenant agreed to pay additional rent for the items sought in those counts, the 2003 lease provided that the tenant "is fully responsible for paying all use and occupancy tax." P-4 at 3.

Although the tenant was obligated to pay U&O taxes as additional rent, the landlord failed to show that the tenant did not pay them. To the contrary, the tenant demonstrated that it *had* paid the U&O taxes. **See** D-3; **see also** N.T., 5/17/18, at 142-144. The evidence established that the landlord and the tenant were both "up-to-date as far as U&O taxes are concerned." N.T., 5/17/18, at 144. From all of the record evidence and drawing all inferences therefrom in favor of the landlord, as the verdict winner, we conclude that the landlord offered no proof that the tenant failed to pay the U&O taxes between June 6, 2011 and the jury trial. As such, the tenant was entitled to JNOV on Count IV.

Finally, in Count VI, the landlord sought payment under the lease's acceleration-of-rent provision; it demanded 44 months' worth of pre-paid

---

[5] Any claim under the 1995 agreement would be barred by the four-year statute of limitations. 42 Pa. C.S.A. §5255(a)(8).

[6] The Complaint's drafter made the same copy and paste error here, too. **See** Note 5, above.

rent, various taxes, and water/sewer bills, totaling $229,329.00. *See* Complaint at 6.

The landlord did not included the accelerated-rent penalty in any of its prayers for relief under its other breach-of-contract counts, as the lease's language provides. In fact, the landlord's attorney never argued to the jury that his client was seeking acceleration of rent in this case, nor did he ask the trial judge for an instruction on this issue. As he told the jury:

> We're seeking just some basic stuff; what's fair. We want just the water that the tenant used just from the last couple of years; not for everything. Just give us the big usage that the tenant used, the business taxes. What the tenant used; the gas.

N.T., 5/19/16, 47. The landlord has not advanced its accelerated-rent theory of recovery, and we do not see how the jury could have, in any way, based its verdict upon that clause. Accordingly, the tenant was entitled to JNOV as to Count VI of the Complaint.

Because the landlord made its *prima facie* case of owed, unpaid, excess real estate taxes, the tenant's appellate issue of insufficient evidence warrants it no relief at this juncture. However, our conclusion that the tenant should have received JNOV on the other five Counts means the total amount of damages awarded by the jury is not supported by the evidence.

In sum, the only claim for which the landlord presented sufficient evidence was Count II, unpaid excess real estate taxes. The claims for water, sewer, gas, use and occupancy taxes, and accelerated rent all fail. As such

the court should have granted judgment notwithstanding the verdict in favor of the tenant on the unsupported claims in Counts I, III, IV, V and VI.

C.    *The Trial Court should have molded the verdict consistent with the evidence at trial.*

The tenant argues that the jury's award of $38,558.00 is excessive and the trial court abused its discretion by not reducing the award to comport with the record evidence. **See** Tenant's Brief at 29-30.

On this issue, the trial court stated in its 1925(a) Opinion stated that "the award of $38,558.00 is not grossly disproportionate to the evidence the landlord presented at trial." Trial Court Opinion, 2/12/18, at 6-7.

While our standard of review for a trial court's denial of remittitur usually is quite yielding, our deference is not boundless. We have said:

> remittitur should fix the highest amount any jury could properly award, giving due weight to all the evidence offered. Therefore, the correct question on review is whether the award of damages falls within the uncertain limits of fair and reasonable compensation or whether the verdict so shocks the sense of justice as to suggest that the jury was influenced by partiality, prejudice, mistake, or corruption. On appeal, the Superior Court is not free to substitute its judgment for that of the fact finder. Rather, it is our task to determine whether the post-trial motions judge committed a "clear" or "gross" abuse of discretion when conducting its initial evaluation of a defendant's request for remittitur.

**Neal v. Bavarian Motors, Inc.**, 882 A.2d 1022, 1028–29 (Pa. Super. 2005) (citations and quotations omitted).

The jury's award of $38,558.00 cannot be supported by the law of contracts in this case. As the landlord's attorney explained to the jury in his opening statement:

> The bottom line is, my client was required to pay what the tax was at the very beginning of the lease, and any increase in value thereafter would require a math problem to be done — which is the excess — that the tenant would be required to pay.
>
> It will be your job to actually do that basic math for us.

N.T., 5/17/16, at 37. We agree with counsel's simple mathematics formula. And this Court is equally capable of doing that basic math.

The uncontradicted evidence at trial, as Ms. Yeung submitted, was that the tenant owed the excess real estate taxes for the relevant period as follows:

| TAX YEAR | PRINCIPAL | BASE YEAR | EXCESS/OVER PRINCIPAL |
|----------|-----------|-----------|-----------------------|
| **2011** | 6,017.51  | 4,969.02  | 1,648.49 |
| **2012** | 6,872.53  | 4,969.02  | 1,903.51 |
| **2013** | 7,119.55  | 4,969.02  | 2,150.53 |
| **2014** | 11,820.01 | 4,969.02  | 6,850.99 |
| **2015** | 11,939.40 | 4,969.02  | 6,970.38 |

P-7 at 1. These numbers, although handwritten, were taken directly from the City and School District of Philadelphia's "Real Estate Tax Receipts" that Ms. Yeung appended to her hand-drawn chart. **See id.** at 2, 11-14.

Using "basic math" to add up the five years of Excess/Over Principal, we find that $19,523.90 is the maximum, possible award that the evidence supports on Count II of the Complaint. N.T., 5/17/16, at 37; **see also** P-7 at 1. Had it correctly applied the law of contracts, the trial court should have

reduced the damages award to $19,523.90, because all of the other Counts should have resulted in JNOV in the tenant's favor.

Thus, we conclude the trial court abused its discretion by sustaining a jury verdict that the law and the facts did not support. We will therefore modify the verdict consistent with this Memorandum.

As a final matter, we reject the tenants claim for a new trial. **See** Luen Fong Produce's Brief at 30-31. Our appellate review has corrected the legal errors below. As we explained, the evidence supports an award of $19,523.90 to the landlord; thus, a new trial is unwarranted.

## IV.  CONCLUSION

The tenant signed a lease obligating it to pay excess real estate taxes, the tenant failed to pay them, and the landlord proved damages that resulted from this breach. The maximum possible award the jury could give the landlord for this breach was $19,523.90. In all other respects, the landlord failed to prove its case, and the tenant was entitled to a judgment notwithstanding the verdict. In light of this, we modify the jury verdict to award $19,523.90 to the landlord.

Judgment affirmed as modified.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/9/19